# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-206

TIMOTHY J. JORDAN, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 1, 2001                         Decided  September 24, 2003  )

*Ronald L. Smith*, of Washington, D.C., for the appellant.

*Gary E. O'Connor*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Acting Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, all of Washington, D.C., were on the pleadings, for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges*.

STEINBERG, *Judge*, filed the opinion of the Court and separate views.

STEINBERG, *Judge*:  The appellant, Timothy J. Jordan, through counsel, seeks review of a November 1999 decision of the Board of Veterans' Appeals (Board or BVA) that determined that there was no clear and unmistakable error (CUE) in an April 1983 Board decision that had denied his claim for Department of Veterans Affairs (VA) service connection for a right-knee disorder. Record (R.) at 2, 9.  The appellant filed a brief, the Secretary filed a motion for summary affirmance, and the appellant filed a reply brief.  Subsequent to oral argument, the appellant and the Secretary each filed a supplemental brief in accordance with a Court order, and the Secretary filed a letter of supplemental authority.  On September 26, 2002, the Court issued a decision affirming the Board decision.  On October 17, 2002, the parties filed a joint motion for reconsideration based on newly discovered legislative and regulatory history, and on November 1, 2002, the Court granted that

motion and withdrew its September 2002 opinion. The Court directed the parties to provide jointly full copies of all pertinent materials as to congressional intent on a particular statutory provision and also to address the remedy each had recommended. The parties responded separately on November 18, 2002, each recommending remand. The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons set forth below, the Court will affirm the Board decision on appeal.

**I. Relevant Background**

The veteran served in the U.S. Marine Corps from November 1969 to January 1970. R. at 12. In August 1968, prior to his entry into service, he was involved in a motorcycle accident that caused multiple contusions and lacerations to his face and left leg. R. at 80. In a March 1969 letter, Dr. Thomas F. Scott, a private physician, stated that, following treatment for these injuries, the veteran had "later [(sometime prior to January 17, 1969)] contacted [the physician] by telephone [and] stat[ed] that the right knee was painful and stiff, [and that] he [had] experienced discomfort in this extremity intermittently since the time of the accident." *Ibid.* Dr. Scott's letter further stated:

> The [veteran] was advised to have an [x-]ray of the right knee taken[,] and this was performed on 1-17-69. . . . Interpretation: No bony lesion demonstrated. The joint space appears to be of normal width both medially and laterally.
>
> In conclusion, I feel that the patient has completely recovered from the injuries sustained in the accident of 8-27-68. The patient will have a permanent scar of the left lower extremity and some minor scars of the face.

*Ibid*.

The veteran's service entrance medical examination records reported an eight-inch scar below the knee on the left leg (R. at 18) but noted that "no disqualifying defects or communicable diseases were noted this date [(November 24, 1969)]" (R. at 16-21). The veteran did not note any illness or injury in the medical-history-questionnaire portion of these records (R. at 16) and recorded "[n]o" in response to each of the following questions: "Have you ever had any illness or injury other than

2

those already noted? . . . Have you consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years?" (R. at 17).

According to a December 1969 Naval Medical Board (Medical Board) report, the veteran, in his third week of service, was referred to the Medical Board for "survey" after an orthopedic consultation for complaints of knee pain. R. at 24. The report (1) recorded a diagnosis of "chondromalacia right patella, EPTE [(existed prior to entrance into service)]"; (2) listed under "origin" that this condition was "not due to [his] own misconduct" and was "not incurred in [the] line of duty"; (3) noted that the condition "existed prior to entry [into service and was] not aggravated by service" and "may be permanent"; and (4) included a recommendation of "discharge [because of] erroneous enlistment". R. at 23. The following questions on the report all were answered in the affirmative: "Did the member appear before the [M]edical [B]oard in person?"; "Has the member been advised of the Medical Board findings?"; and "Has the member been offered an opportunity to submit a rebuttal statement in writing?" *Ibid.* In the examination summary attached to its report, the Medical Board stated:

> This man reports that he injured his right knee in a motorcycle accident some fifteen months ago. Since that time[,] he has had intermittent pain and has noticed crepitation in his right knee. A history of his knee injury is not made on his [enlistment medical examination reports].
>
> Physical Examination at the present time reveals some vague tenderness about the right knee. There is marked patello-femoral crepitation with flexion and extension, both audible and palpable. The x-rays are within normal limits. The remainder of the general physical examination is within normal limits.

R. at 24. Also attached to the Medical Board report is a "[s]tatement of patient concerning the findings of a Medical Board", which recorded the following statement, signed by the veteran: "I have been informed of the findings of the [M]edical [B]oard of 31 Dec [19]69 in my case that my present condition is NOT physically qualified for duty and of the recommendation of the [Medical] Board that I be discharged from the naval service for reason of erroneous enlistment." R. at 22. This statement also included the following preprinted sentence: "Having been informed of the findings and recommendation of the [Medical] Board, *I do (not)* desire to submit a statement in rebuttal."

*Ibid*. (emphasis added). There is no marking on the form to specify that the veteran selected either "do" or "[do] (not)". *See ibid.*

On August 6, 1981, the veteran filed an application for VA compensation or pension for "chondromalacia right, EPTE service connected [sic]". R. at 36. In a November 1981 decision, a VA regional office (RO) denied the veteran's claim for service connection and found that the condition had "[e]xisted prior to service" and was "not aggravated beyond natural progress during service." R. at 49. In a June 1982 Substantive Appeal to the BVA, the veteran stated, inter alia, that he "did not even know [he could] [r]ebut[] . . . to the [M]edical [B]oard at [the] time of discharge." R. at 62. In August 1982 sworn testimony before the BVA (R. at 65-78), he stated that (1) as a result of the August 1968 accident, he had skinned his right knee below the kneecap, which caused a bruise and some pain and stiffness (R. at 72, 75-76); (2) he never had experienced any crackling or pain in that knee prior to service (*ibid.*); (3) he had injured his knee "in the course of basic training, doing a lot of leg work, extensive running around . . . , jumping up and down[,] and going through some vigorous type of [basic training] that they put you through" (R. at 74); and (4) he had never met personally with the Medical Board (R. at 71).

In April 1983, the BVA denied the veteran's claim for service connection for a right-knee disorder. R. at 99. The Board reasoned:

> In this case, the evidence clearly demonstrates [that] the veteran experienced a trauma before service to his right kneecap. Thus, the Board is persuaded that there is clear and unmistakable evidence that a right[-]knee trauma preexisted the veteran's active service and the presumption of soundness is rebutted.
>
> The question remaining before the Board is whether during the veteran's brief period of active service, his preexisting right[-]knee injury increased in severity, as distinguished from a temporary increase in symptoms. The evidence indicates that following his motorcycle accident, the veteran experienced symptoms for several months, finally seeking further evaluation in January 1969. [Although] the activities of recruit training may have been painful due to an increased use of the affected joint, the Board finds no evidence of reinjury or other clinical findings showing an increase in the underlying pathology of his knee disorder.

R. at 98.

4

In December 1998, the veteran submitted to the Board a petition for revision, on the grounds of CUE, of the Board's April 1983 decision. R. at 123-26. The veteran's representative filed with the Board an October 1999 motion for revision of the April 1983 Board decision (but titled this document both a "Motion for Revision" and "Appellant's Brief"). R. at 153-56. This document stated in pertinent part:

> The [veteran] maintains [that] the 1983 Board's finding of fact that there was no increase in the severity of the right[-]knee disability is unsupported by the record. He claims [that] he was found physically fit at induction and [that] his right[-] knee [condition] was aggravated by physical conditioning exercises during basic training.

R. at 154. In the November 1999 BVA decision here on appeal, the Board found that there was no CUE in the April 1983 Board decision and that, accordingly, that decision should not be revised or reversed under 38 U.S.C. § 7111. R. at 9.

Following oral argument before the Court, the Court issued a May 3, 2001, order directing the parties to file supplemental briefing addressing, inter alia, "[t]he extent (if any) to which the Secretary has implemented through regulation the words 'and was not aggravated by such service' in 38 U.S.C. § 1111." *Jordan (Timothy) v. Principi*, U.S. Vet. App. No. 00-206, 2001 WL 504943, at *1 (May 3, 2001) (per curiam order). The appellant filed his supplemental brief in June 2001, and the Secretary filed his supplemental brief in September 2001.

In its September 26, 2002, opinion affirming the November 1999 Board decision, the Court rejected the appellant's statutory-interpretation argument that, notwithstanding 38 C.F.R. § 3.304(b) (1982), the provisions of 38 U.S.C. § 353 (1979) (now 38 U.S.C. § 1153) were inapplicable to an aggravation claim (1) where the Board had found (in the BVA decision under collateral attack in this case) that the veteran's condition that had not been noted at entry was preexisting because the presumption of sound condition, pursuant to 38 U.S.C. § 311 (1979) (now 38 U.S.C. § 1111), had been rebutted by clear and unmistakable evidence showing that the condition had preexisted service; and (2) where the Board had denied service connection because it found that the evidence did not support a finding that the disability had increased in severity during service. *Jordan (Timothy) v. Principi*, No. 00-206, 2002 WL 31163854 (Vet. App. Sept. 26, 2002), *withdrawn,* 2002 WL 31445159, at *12-14 (Vet. App. Nov. 1, 2002).

On October 17, 2002, the parties filed a joint motion for panel reconsideration based on newly discovered legislative and regulatory history and recommended that the Court invalidate 38 C.F.R. § 3.304(b) to the extent that it provides that "the presumption of sound condition may be rebutted solely by clear and unmistakable evidence that a disease or injury existed prior to service" – that is, without also requiring clear and unmistakable evidence that the disease or injury was *not* aggravated in service. Joint Motion (Mot.) at 11. On November 1, 2002, the Court granted that joint motion for reconsideration and withdrew its September 26, 2002, opinion. *Jordan*, 2002 WL 31445159, at *2. The Court directed the parties to provide full copies of all pertinent materials regarding congressional intent in connection with 38 U.S.C. §§ 311 and 353 (1979) and the meaning of the language "and was not aggravated by such service" in section 311. *Jordan*, 2002 WL 31445159, at *3. The parties responded separately on November 18, 2002.

In *Cotant v. Principi*, the Court took judicial notice of the October 17, 2002, *Jordan* joint motion and November 18, 2002, subsequent pleadings because the two cases raised the "question of the proper interpretation of sections 1111 and 1153 and the validity of the pertinent part of 38 C.F.R. § 3.304(b) under that interpretation." *Cotant v. Principi,* 17 Vet.App. 116, 124 (2003). In *Cotant*, the Court declined to invalidate 38 C.F.R. § 3.304(b) because it found that "the Court need not deal with § 3.304(b) in order to review the BVA decision on appeal and provide the remedy sought by the appellant"; the Court stated: "[T]he Court has determined that the problems with the Secretary's regulations run far deeper than the limited § 3.304(b) remedy sought by the parties. . . . [T]he task of straightening out this extraordinarily complicated and tangled web of apparently conflicting statutory and regulatory provisions will be left to the Secretary." *Cotant*, 17 Vet.App. at 130.

On July 28, 2003, the Secretary filed a notice of supplemental authority under Rule 30(b) of the Court's Rules of Practice and Procedure regarding a precedential opinion of VA's General Counsel that adopted the position taken by the parties in their October 17, 2002, joint motion, VA Gen. Coun. Prec. 3-2003 (July 16, 2003) [hereinafter G.C. Prec. 3-2003], and the Court's opinion in *Cotant*, *supra*. In that precedential opinion, the VA General Counsel ruled that § 3.304(b) was invalid because it conflicted with section 1111, as the parties have contended in the instant case.

6

## II. Analysis

### A. CUE Law and Regulations

Once a BVA decision has become final, as had the 1983 BVA decision being collaterally attacked here, it generally may not be reversed or amended in the absence of CUE. *See* 38 U.S.C. § 7111; 38 C.F.R. §§ 20.1400-20.1403 (2002); *cf.* 38 U.S.C. § 5109A (providing for revision of VARO decision on basis of CUE); 38 C.F.R. § 3.105(a) (2002) (same). Pursuant to section 7111, this Court has jurisdiction to review a BVA decision that considered a claim asserting CUE in a previous BVA decision if that claim was pending or was filed on or after November 21, 1997. *See Swanson v. West*, 12 Vet.App. 442, 452 (1999); *Lane v. West*, 11 Vet.App. 412, 413 (1998) (per curiam order); *Wilson (Richard) v. West*, 11 Vet.App. 253, 254 (1998) (per curiam order).

Section 20.1403 of title 38, Code of Federal Regulations, provides, in pertinent part:

> (a) *General.* [CUE] is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Generally, either the correct facts, as they were known at the time, were not before the Board, or the statutory and regulatory provisions extant at the time were incorrectly applied.

> (b) *Record to be reviewed*–(1) *General.* Review for [CUE] in a prior Board decision must be based on the record and the law that existed when that decision was made.

> (2) *Special rule for Board decisions issued on or after July 21, 1992.* For a Board decision issued on or after July 21, 1992, the record that existed when that decision was made includes relevant documents possessed by [VA] not later than 90 days before such record was transferred to the Board for review in reaching that decision, provided that the documents could reasonably be expected to be part of the record.

> (c) *Errors that constitute [CUE]*. To warrant revision of a Board decision on the grounds of [CUE], there must have been an error in the Board's adjudication of the appeal which, had it not been made, would have manifestly changed the outcome when it was made. If it is not absolutely clear that a different result would have ensued, the error complained of cannot be clear and unmistakable.

7

. . . .

(e) *Change in Interpretation*. [CUE] does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation.

38 C.F.R. § 20.1403(a), (b), (c), (e); *see Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc) (stating that CUE "must be the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made"); *see also Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting the "manifestly changed the outcome" language in *Russell*, *supra*); *Damrel v. Brown*, 6 Vet.App. 242, 245 (1994); *cf. Bustos*, 179 F.3d at 1381 (noting that 38 U.S.C. § 5109A "merely codified 38 C.F.R. § 3.105 and the [United States] Court of Appeals for Veterans Claims' long[-]standing interpretation of CUE"). In *Russell*, the Court held: "A determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior . . . decision." *Russell*, 3 Vet.App. at 314; *see also* 38 C.F.R. § 20.1403(b). These CUE regulations represent a codification of our caselaw in *Smith (Rose) v. West*, 11 Vet.App. 134, 137-38 (1998) (rejecting CUE claim as to 1969 RO decision based on its application of VA regulation invalidated by this Court in 1993 because RO in 1969 had applied "the law in effect at that time", *id.* at 137). *See also Berger v. Brown*, 10 Vet.App. 166, 170 (1997).

"In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Russell*, 3 Vet.App. at 313; *see also* 38 C.F.R. § 20.1403(a); *Damrel*, *supra*. A CUE claim must also demonstrate that if the error(s) had not been made it (they) "would have manifestly changed the outcome." *Russell*, *supra*; *see also Bustos*, 179 F.3d at 1380. Moreover, the Court held in *Fugo v. Brown* that "to reasonably raise CUE there must be some degree of specificity as to what the alleged error is and . . . persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error." *Fugo*, 6 Vet.App. 40, 44 (1993); *see also* 38 C.F.R. § 20.1404(b); *Crippen v. Brown*, 9 Vet.App. 412, 420 (1996).

*Russell* also established that, as a threshold matter, a CUE claim cannot be raised for the first time before this Court; instead, the claim must have been the subject of a final prior BVA

adjudication. *Russell*, 3 Vet.App. at 314-15. The CUE claim presented here is a collateral attack on a final BVA decision. *Cf. Crippen*, 9 Vet.App. at 418 (as to collateral attack on prior **RO** decision); *see also Mason (Sangernetta) v. Brown*, 8 Vet.App. 44, 51 (1995) (stating that effective date earlier than that awarded in previous RO decision may generally be awarded only if there was CUE in that decision or it never became final); *Fugo*, *supra*. Just as when the Court reviews a Board decision that found no CUE in a prior final **RO** decision, *see Eddy v. Brown*, 9 Vet.App. 52, 57 (1996); *Damrel*, 6 Vet.App. at 246; *Russell*, 3 Vet.App. at 315, when the Court reviews a Board decision that found no CUE in a prior final **Board** decision, the Court's review is limited to determining whether the Board's conclusion about the prior final decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)) and whether it is supported by an adequate statement of "reasons or bases" (38 U.S.C. § 7104(d)(1)), *see Beyrle v. Brown*, 9 Vet.App. 377, 384 (1996) (holding that Board failed to provide adequate statement of reasons or bases for rejection of claim of CUE as to RO decision); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990); *see also Eddy* and *Russell*, both *supra*.

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has recognized that this Court's caselaw as to review of a Board decision that there was no CUE in a prior final RO decision is equally applicable to a collateral CUE attack on a prior final BVA decision under section 7111 and has also specifically sustained the validity of § 20.1403(a), (c), and (e):

> First, Rule 1403(a) is consistent with 38 U.S.C. § 7111. We have stated that, in 38 U.S.C. § 5109A, which relates to CUE at the RO and which in relevant part is identical to § 7111, Congress expressly adopted the Court of Appeals for Veterans Claims' definition of CUE that requires that "a claimant must show . . . an error that would manifestly change the outcome of a prior decision." *Bustos*, 179 F.3d at 1381. Rules 1403(a) and 1403(c) adhere to the "but for" test affirmed in *Bustos* and established by the Court of Appeals for Veterans Claims in *Russell*, 3 Vet.App. at 313-14. *See also Yates v. West*, 213 F.3d 1372, 1374-75 (Fed. Cir. 2000).
>
> . . . .
>
> Turning to Rule 1403(e), it addresses whether a change in the interpretation of a statute or regulation may support a claim of CUE when the prior Board decision represents a correct application of the

statute or regulation as it was interpreted at the time of the decision. As noted above, Congress intended to codify 38 C.F.R. § 3.105(a) and the Court of Appeals for Veterans Claims' interpretation of CUE. ***In Russell, 3 Vet.App. at 313, the Court of Appeals for Veterans Claims concluded that "changes in the law subsequent to the original adjudication . . . do not provide a basis for revising a finally decided case." This interpretation is consistent with the concept that a claim of CUE is a collateral attack on a final RO or Board decision.*** *See* H.R. Rep. No. 105-32, at 3. The new interpretation of a statute can only retroactively effect decisions still open on direct review, not those decisions that are final. *See, e.g., Harper*[ *v. Virginia Dep't of Taxation*], 509 U.S. [86, 97 (1993)] (applying the new interpretation of a federal law to the parties before the Supreme Court, and all cases "still open on direct review"). Finally, [the National Association of Veterans' Advocates, Inc. (NOVA) (amicus curiae)] fear[s] that changes in the law will be unknown is unfounded because any rules of procedure or substantive rules of the VA must be published pursuant to 5 U.S.C. § 552(a)(1), and decisions of the Court of Appeals for Veterans Claims are published pursuant to 38 U.S.C. § 7269. In short, we sustain Rule 1403(e) as a valid exercise of the VA's rulemaking authority.

*Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000) (emphasis added).

### B. Court's Jurisdiction

The appellant presents the following CUE argument as to the Board's April 1983 decision and 38 U.S.C. § 1111:

> The Board denied the appeal on the ground that there was no evidence [that] Mr. Jordan had re-injured his knee or that there had been an increase in the underlying knee pathology during service. The Board thereby unlawfully relieved the Government of its burden to prove by clear and unmistakable evidence [that] the pre-service injury had not been aggravated and denied service connection because aggravation had not been affirmatively established by evidence. . . . The Board unlawfully denied service connection even though the statutory presumption of aggravation had not been rebutted by clear and unmistakable evidence that aggravation of the [v]eteran's right[-] knee injury had not occurred during service. Depriving Mr. Jordan of the benefit of the [38 U.S.C.] § 1111 presumption of aggravation changed the outcome of his claim.

Appellant's Brief (Br.) at 8-9. The Secretary argues in part that the Court should not consider the appellant's CUE argument because, although the appellant raised *a* CUE argument before the Board, he did not raise *this specific* CUE argument. Secretary's Mot. at 1, 6-7. The appellant responds in his reply brief that he should be allowed to raise his CUE argument before the Court because he "has a right to invoke this Court's jurisdiction to challenge that [April 1983 BVA] decision." Reply Br. at 2. He cites to *Maggitt v. West*, 202 F.3d 1370, 1376-77 (Fed. Cir. 2000), to support his position.

In *Andre v. West*, this Court stated the following as to its jurisdiction in the context of CUE claims and the Federal Circuit's *Maggitt* opinion:

> In *Maggitt*[, *supra*], the . . . Federal Circuit held that "a broad [Notice of Disagreement] . . . may confer jurisdiction over the entire request for a benefits entitlement." *Id.* at 1375. This would include particular arguments advanced in support of a *particular* benefit request where the Court *does* possess jurisdiction over that benefit request. *Id.* However, a CUE claim is "a collateral attack on a final [VA] decision" and must be alleged with specificity. [(Citations omitted.)] . . . Because CUE claims by their very nature must allege "some degree of specificity," *Crippen*[, 9 Vet.App. at 420] . . . , each specific theory underlying an attack on a final decision would necessarily constitute a separate claim.

*Andre*, 14 Vet.App. 7, 10 (2000) (per curiam order), *aff'd sub nom. Andre v. Principi*, 301 F.3d 1354,1361 (Fed. Cir. 2002) ("each 'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the BVA before the [United States Court of Appeals for Veterans Claims] can exercise jurisdiction over it" (quoting *Russell*, 3 Vet.App. at 315)). Hence, *Andre* held, in effect, that a CUE claim before the Court that is based upon an argument not previously raised to the Board (before it rejected a CUE claim as to the same prior final VA decision) is a different CUE claim; the Federal Circuit reached this conclusion after considering the following rather general argument for applying the logic of *Maggitt* to a claim of CUE, to wit: Because CUE must be pled with some degree of specificity, *see, e.g.*, *Sondel v. Brown*, 6 Vet.App. 218, 220 (1994), the change of a theory underlying a CUE claim could be interpreted in certain cases as representing not an appeal of the CUE claim rejected by the Board, but an entirely new CUE claim over which the Board has not rendered a decision and over which the Court thus lacks jurisdiction, *see* 38 U.S.C. § 7252(a)

11

(providing that Court has jurisdiction over decisions of Board); and CUE claims are unlike those contemplated by *Maggitt*, wherein the claim and the argument are essentially one and the same.

In his filing, entitled "Appellant's Brief", to the Board, the appellant in the instant case argued in part as follows: "[T]he 1983 Board's finding of fact that there was no increase in the severity of the right[-]knee disability is unsupported by the record. He claims [that] he was found physically fit at induction and [that] his right[-]knee [condition] was aggravated by physical conditioning exercises during basic training." R. at 154. The Board, in its November 1999 decision, noted: "The appellant essentially argues that, at the time of its April 1983 decision denying entitlement to service connection for a right[-]knee disorder, the Board failed to properly apply the 'presumptions of soundness and aggravation.' *See* 38 U.S.C.[] §§ 1111, 1137, 1153." R. at 3. In his opening brief to this Court, the appellant states the issue on appeal as follows:

> Where a veteran was entitled to the presumption of soundness provided by 38 U.S.C.[] § 1111 . . . , was the decision of the Board . . . , holding there was no [CUE] in a 1983 Board decision, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law where the 1983 decision unlawfully relieved the Government of its burden to prove non-aggravation in order to rebut the presumption and denied the claim because the veteran failed to prove aggravation?

Br. at 1.

Put succinctly, the appellant argued before the Board that the Secretary had failed to show by competent evidence that the appellant's knee condition had not been aggravated in service. Before the Court, the appellant argues that the Secretary has failed to rebut by competent evidence the purported aggravation prong of the section 1111 presumption of soundness as it relates to his knee condition. The only notable differences between the appellant's two arguments are that (1) he did not cite section 1111 before the Board and (2) his arguments before the Court are phrased in a slightly different manner. Neither of these differences should be sufficient to deny him, on the basis that he has raised a new CUE claim, jurisdiction to obtain review in this Court; under *Fugo*, *supra*, his rephrasing of his CUE argument still meets the requirement that he allege error with "some degree of specificity". *See Bradley v. Principi*, 14 Vet.App. 255, 256-57 (2001) (per curiam order) (stating that "each [CUE] theory alleged necessarily constitutes a separate claim"); *Crippen*,

12

9 Vet.App. at 420; *Sondel*, *supra* (holding that, although "the appellant has raised the issue of CUE before the Board, he did not raise the specific CUE *issue* presently before this Court" (emphasis added)); *Fugo*, 6 Vet.App. at 44. Although the Secretary argues before the Court that the appellant did not argue his section 1111 theory before the Board, it is apparent that the Board thought that he had presented that argument because it cited section 1111 when it summarized the appellant's arguments. R. at 3.

Accordingly, we hold that the CUE claim that the appellant presented to the Board set forth a theory of CUE based on a failure by the Board in 1983 to apply properly the presumptions of sound condition and aggravation as they were then set forth in the former sections 1111 and 1153. His contentions before the Court merely place this argument within the rubric of the statutory framework but do not alter the essential nature of what he argued to the Board. In that regard, the Court stresses that its holding is based on three factors: (1) The Board's characterization of the issue as an argument that the previous Board decision had failed to apply properly the presumptions of "soundness and aggravation" (R. at 3); (2) the Court's recognition of the unique character of CUE claims as collateral attacks on prior final VA adjudications; and (3) the Court's recognition that the liberal construction of a VA claimant's pleadings must be tempered somewhat in CUE cases because of the special nature of CUE claims (although, nonetheless, *Fugo*, *supra*, does not require pleading with *exactitude*, only with some degree of specificity). To hold otherwise would shackle appellants, who are generally unrepresented by counsel before the Board, with the verbatim text in Court proceedings of whatever words they used in their arguments to the Board. *Maggitt* stands at least for the proposition that an appellant can flesh out and rephrase his argument before this Court, and *Fugo*'s requirement of "*some degree of specificity*" is broad enough to allow an appellant to rephrase and provide additional argument and support for the same basic CUE argument presented before the Board. *Cf. Andre v. Principi*, 301 F.3d at 1362 (holding that United States Court of Appeals for Veterans Claims had no jurisdiction to review appellant's challenge to 1973 RO decision on CUE grounds that were "entirely separate and distinct claims that the Board's decision [on appeal] had not addressed"). Therefore, the Court will proceed to consider the appellant's CUE-claim arguments presented on appeal of the November 1999 BVA decision.

13

### C. Applicable Law and Regulation

Two provisions in chapter 11 of title 38, U.S. Code, are implicated here. Section 311 of title 38 of the U.S. Code provided at the time of the 1983 BVA decision:

> [E]very veteran [in the active military, naval, or air service during a period of war] shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or *where clear and unmistakable evidence demonstrates that the injury or disease* existed before acceptance and enrollment and *was not aggravated by such service*.

38 U.S.C. § 311 (1979) (emphasis added). Section 353, titled "Aggravation", then provided:

> A preexisting injury or disease *will be considered to have been aggravated* by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 353 (1979) (emphasis added). The same language is currently found in sections 1111 and 1153, respectively.

The relationship between the provisions of section 311 and of section 353 had not been specifically addressed by Congress in 1983, nor has it been today. *See Cotant*, 17 Vet.App at 124-30. It was left to the Secretary, who was charged with the responsibility for applying those provisions, and who thus was responsible for interpreting them in the first instance, to write regulations to implement them, *see* 38 U.S.C. § 210(c)(1) (1979) (currently codified at 38 U.S.C. § 501(a)(1)), specifically, 38 C.F.R. §§ 3.304 (direct service connection; wartime and peacetime) and 3.306 (aggravation of preservice disability). These provisions provided in pertinent part:

#### § 3.304  Direct service connection; wartime and peacetime.

> (b) *Presumption of soundness.* The veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto. Only such conditions as are recorded in examination reports are to be considered as noted.

**§ 3.306  Aggravation of preservice disability.**

> (a) *General*.  A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

> (b) *War service*.  Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the preservice disability underwent an increase in severity during service.

38 C.F.R. §§ 3.304(b), 3.306(a), (b) (1982).  Both of these regulations exist in substantially the same form today.  38 C.F.R. §§ 3.304(b), 3.306(a), (b) (2002); *see* 57 Fed. Reg. 59, 296 (Dec. 15, 1992) (providing for amendment of § 3.306(b) heading from "*War Service.*" to "*Wartime service; peacetime service after December 31, 1946.*").

### D.  Principal CUE-Merits Arguments

Against this backdrop, we turn to the appellant's principal contentions, which he casts in terms of the current statutory section numbers (sections 1111 and 1153).  In his pleadings during the original adjudication of this case, the appellant argued that the Court should reverse the November 1999 Board decision because the Board in 1983 had committed CUE in denying his appeal on the ground that there was no evidence that he had reinjured his knee or that there had been an increase in the underlying knee pathology during service.  The appellant made three principal arguments for reversal on the basis of CUE:  (1) The aggravation-of-injury rule in section 1153 applies only to injuries noted upon entry into service and where the only issue is aggravation; (2) the absence of evidence of aggravation cannot alone constitute "clear and unmistakable evidence" under section 1111 that his injury was not aggravated by service; and (3) medical-judgment evidence alone cannot  rebut the presumption of soundness under current section 1111.  Brief (Br.) at 11-19.  As a result of the parties' October 17, 2002, joint motion and November 18, 2002, response, the appellant now argues for remand to the Board for readjudication after the proposed invalidation of § 3.304(b).

15

### 1. Not-Noted-on-Entry-into-Service Argument

The appellant's argument in his principal brief is that the presumption of aggravation in section 1111 (former section 311) applies whenever the defect is not noted upon entry into service and that section 1153 (former section 353) applies only when the defect *is* noted upon entry. The Secretary also adopted this position in the parties' October 17, 2002, joint motion. *See also* G.C. Prec. 3-2003. The appellant argues that because his defect was *not* noted upon entry, the Board should have applied the second part (aggravation) of the section 1111 presumption of soundness and that the Board thus erred in 1983 by instead applying § 3.306(b) and not requiring, as he asserts that section 1111 requires, clear and unmistakable evidence of the absence of aggravation. Br. at 8-9; 11-16. In the 1983 BVA decision, the Board followed and applied the Secretary's regulation at § 3.306(b), and did not apply the presumption of aggravation because it had determined that the appellant's preexisting right-knee injury had not increased in severity during service: "[Although] the activities of recruit training may have been painful due to an increased use of the affected joint, the Board finds no evidence of reinjury or other clinical findings showing an increase in the underlying pathology of his knee disorder." R. at 98; *see* 38 C.F.R. § 3.306(b) (1982) (requiring clear and unmistakable evidence to rebut presumption of aggravation only "where the preservice disability underwent an increase in severity during service").

The Court holds that the Board made no error in this regard. Even if the parties' joint interpretation of section 1111 were to prevail today, under 38 U.S.C. § 4004(c) (1982) (in effect at time of 1983 BVA decision and now found at section 7104(c)), the Board was bound to apply the Secretary's regulations to the appellant's claim. 38 U.S.C. § 4004(c) (1982) (providing that Board is bound in its decisions by VA regulations). Moreover, § 20.1403(e) provides that CUE "does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation." 38 C.F.R. § 20.1403(e); *see Smith (Rose)* and *Berger*, both *supra*. Hence, as in *Cotant, supra*, the Court will decline to address this argument because a new statutory interpretation reached by this Court would not benefit the appellant in his CUE challenge to the 1983 BVA decision. *See ibid.* Accordingly, the Court will leave to the Secretary the "task of straightening out this extraordinarily

16

complicated and tangled web of apparently conflicting statutory and regulatory provisions." *Cotant*, 17 Vet.App. at 130.

Further, as to the appellant's arguments relating to the absence of medical evidence and use of medical-judgment evidence, the Court will not address those arguments for the same reasons set forth above, and because those arguments depend upon a statutory interpretation that the Court has stated both that it will not make and that it has found, even if it were to be made, would not benefit the appellant in his CUE challenge to the 1983 BVA decision.

### 2. Outcome Change

The Court also notes that, even if we were to accept one or all of the appellant's assertions of an error in application of law, specifically the presumption of aggravation, CUE caselaw, as well as the applicable VA regulation, requires a claimant to give "persuasive reasons" why the outcome would have been manifestly changed had that error not been committed. *Fugo*, *supra*; *see also* 38 C.F.R. §§ 20.1403(a), 20.1404(b) (2001); *Bustos*, *Crippen*, *Damrel*, and *Russell*, all *supra*. Because of our conclusions in part II D.1, above, we need not address whether the appellant has shown that the outcome would have been manifestly changed but for one of the errors that he asserts was undebatably made. *See* 38 C.F.R. § 20.1403(c); *Fugo* and *Russell*, both *supra*. The appellant's arguments must be viewed in the context of the instant CUE challenge rejected by the Board. In order to prevail on his CUE claim, the appellant would not only have to prove that at least one of his preceding three statutory-interpretation arguments is persuasive, which he has not done, but he would also have to show that the Board's 1999 decision, in rejecting such an argument, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)). Because the appellant has failed to make such a persuasive statutory-interpretation argument, it follows that he has not demonstrated that the Board decision was arbitrary or capricious. *See Link v. West*, 12 Vet.App. 39, 44 (1998); *Eddy* and *Russell*, both *supra*.

### 3. Adequate Statement of Reasons or Bases

Finally, in addition to examining whether a Board decision reviewing a previous BVA decision for CUE is arbitrary or capricious, 38 U.S.C. § 7261(a)(3)(A), the Court must also examine the Board decision on appeal to determine whether it is supported by an adequate statement of "reasons or bases", 38 U.S.C. § 7104(d)(1). *See Beyrle*, *supra*; *Eddy*, 9 Vet.App. at 57; *Russell*,

17

3 Vet.App. at 315; *Gilbert*, *supra*. The Court holds that the Board's statement of reasons or bases is adequate.

### III.  Conclusion

On consideration of the foregoing analysis, the parties' pleadings, and a review of the record on appeal, the Court holds that the appellant has not demonstrated that the determination in the Board's November 1999 decision that there was no CUE in the April 22, 1983, Board decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 38 U.S.C. § 7261(a)(3)(A); *Link*, *Eddy*, and *Russell*, all *supra*. As discussed above, the appellant has not presented a valid basis for a CUE claim in connection with his principal contention regarding the interpretation and application of the section 1111 presumption of soundness, *see* 38 C.F.R. § 20.1403(e); *Smith (Rose)* and *Berger*, both *supra*. Nor did the Board decision violate the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1), *see Beyrle*, *Eddy*, and *Russell*, all *supra*; *Gilbert,* 1 Vet.App. at 56-57. Accordingly, the November 1999 decision of the Board is affirmed.

AFFIRMED.

### Separate Views

STEINBERG, *Judge*:  I write separately to address certain arguments raised by the appellant that were discussed to similar effect in the Court's prior but now-withdrawn opinion in this case, *Jordan (Timothy) v. Principi*, No. 00-206, 2002 WL 31163854 (Vet. App. Sept. 26, 2002), *withdrawn,* 2002 WL 31445159 (Vet. App. Nov. 1, 2002).

#### A.  Absence of Evidence

The appellant argues:  "The absence of evidence [of aggravation] could not satisfy the [section 1111] statutory requirement for clear and unmistakable evidence in this case." Br. at 9. The Secretary counters that the appellant's argument is contrary to the Federal Circuit's decision in *Maxson v. Gober*, 230 F.3d 1330 (Fed. Cir. 2000). Mot. at 7-8. The Federal Circuit held in *Maxson* regarding the consideration of the absence of evidence in aggravation claims:

> [E]vidence of a prolonged period without medical complaint can be
> considered, along with other factors concerning the veteran's health
> and medical treatment during and after military service, as evidence

18

of whether a pre[]existing condition was aggravated by military service. *See* 38 C.F.R. § 3.306(b) ("[a]ggravation may not be conceded where the disability underwent no increase in severity on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during and subsequent to service[]"). The trier of fact should consider all of the evidence including the availability of medical records, the nature and course of the disease or disability, the amount of time that elapsed since military service, and any other relevant facts.

*Maxson*, 230 F.3d at 1333. The appellant attempts to distinguish his case from *Maxson* by stating: "*Maxson* involved 38 U.S.C.[] §§ 1153 . . . [and] 1154(b) and this appeal is based on the [section] 1111 presumption of soundness. The standard for rebuttal in *Maxson* was . . . 'clear and convincing evidence to the contrary.' . . . The standard for rebuttal in this case under [section] 1111 is clear and unmistakable evidence." Reply Br. at 6-7. Even though, based on the Court's analysis in part II.D.1., above, we are not addressing the section 1111/1153 question at this time, I will assume, *arguendo*, without deciding for purposes of this *Maxson* discussion, that this case does involve section 1111 and the need for clear and unmistakable evidence and that the *Maxson* analysis applies equally to the clear-and-unmistakable-evidence standard in section 1111.

As to the rebuttal of the aggravation part of the presumption of soundness, any examination of the kind of evidence that can be relied on by VA to rebut that presumption must, as the appellant suggests, take into account the very high standard of proof ("clear and unmistakable evidence") required for such rebuttal. *Cf. Cotant v. Principi,* 17 Vet.App. 117, 131 (2003) (holding that clear-and-unmistakable-evidence standard in 38 C.F.R. § 3.306(b) is "onerous" and requires an "undebatable" result). That standard of proof should, by itself, be enough to defeat any theory that the analysis in *Maxson* would allow the Secretary to rebut the section 1111 presumption of soundness merely by the absence of evidence. Moreover, *Maxson* itself did not endorse allowing the absence of evidence, standing alone, to rebut a presumption; rather, the opinion stated that the absence of evidence "can be ***considered***, ***along with other factors***". *Maxson*, 230 F.3d at 1333 (emphasis added). Thus, it seems indisputable that, in accordance with the general logic of *Maxson*, *supra*, the absence of evidence ***may be considered as one factor*** in rebutting the section 1111 presumption of soundness.

19

Moreover, the appellant's concerns about this point appear to be misplaced in this case, because the November 1999 Board decision discussed, as did the April 1983 Board decision being challenged on CUE grounds, the **positive** evidence of record, including, inter alia, the reports of the Medical Board (R. at 22-25) and Dr. Scott's letter (R. at 80). R. at 8, 98. The November 1999 Board decision further noted that the report of the Medical Board made an **affirmative** finding of no aggravation. *See* R. at 8. The sole possible references to the absence of any evidence are in (1) the April 1983 Board decision, wherein the Board stated: "[T]he Board finds no evidence of reinjury or other clinical findings showing an increase in the underlying pathology of [the veteran's] knee disorder . . . ." (R. at 98) and (2) the November 1999 Board decision, wherein the Board stated that "private medical records dated subsequent to service show no complaint or finding relative to the right knee . . . ." (R. at 8). However, such consideration was only one factor in the analysis in both Board decisions. Hence, in view of the considerable reliance on the positive evidence of record by the Board in both 1983 and 1999, to the extent that the Board did consider the absence of evidence in its 1983 and 1999 determinations, I do not find that the Board's actions were arbitrary or capricious. *See* 38 U.S.C. § 7261(a)(3)(A); *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc); *Link v. West*, 12 Vet.App. 39, 44 (1998); *Eddy v. Brown*, 9 Vet.App. 52, 57 (1996).

In addition, the appellant makes another argument as to certain evidence considered by the Board in its 1999 decision. Reply Br. at 7. The Board decision on appeal stated that, although "during [his] service, the veteran apparently reported some increase in symptomatology, private medical records dated subsequent to service show no complaint or finding relative to the right knee." R. at 8. The appellant asserts that these records were "not before and not relied on by the 1983 Board in reaching [its] decision." Reply Br. at 7. The only evidence of postservice medical records in the record on appeal are several brief entries dating from 1972 to 1979, on an unidentified physician's record. R. at 81-83. These records apparently were received by the Board at the appellant's August 1982 hearing. R. at 80. Therefore, the appellant's contention that these records were "not before" the Board in 1983 appears to be incorrect; although the 1983 Board decision does not explicitly mention these records (R. at 95-99), they cannot, without some further showing by the appellant, be said not to have been "relied on" by the Board. Further, the Court has recognized (in a non-CUE context) that, in reviewing the determination whether or not evidence constitutes clear

20

and unmistakable evidence, "the Court considers the history recorded at the time of examination together with 'all other material evidence'." *Crowe v. Brown*, 7 Vet.App. 238, 245-46 (1994) (quoting 38 C.F.R. § 3.304(b)(1)). The appellant has presented no argument that such postservice medical evidence is not "material". Therefore, the consideration of such evidence in the 1999 Board decision was not arbitrary or capricious, *see* 38 U.S.C. § 7261(a)(3)(A), *Link*, *Eddy*, and *Russell*, all *supra*, and I find that the Board decision on this point is supported by an adequate statement of reasons or bases, *see* 38 U.S.C. § 7104(d)(1); *Beyrle v. Brown*, 9 Vet.App. 377, 384 (1996); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990); *Eddy* and *Russell*, both *supra*.

### B.  Medical-Judgment Evidence

The appellant also argues with considerable force that, by substituting in section 311 the language "or where clear and unmistakable evidence demonstrates that the injury or disease existed prior to acceptance and enrollment and was not aggravated by such active military or naval service" for the language "or where evidence or medical judgment is such as to warrant a finding that the injury or disease existed prior to acceptance and enrollment", Congress intended that "medical judgments alone, regardless of how emphatic or numerous, are insufficient as a matter of law to rebut the [section] 1111 presumption." Br. at 18. The appellant further argues that this congressional intent is demonstrated by comparing the language of the amended current section 1111 with the language of the current section 1132 peacetime presumption of soundness, which retains the "medical judgment" language. The appellant states as follows:

> The statutory scheme enacted by Congress is intended to treat veterans of wartime service more favorably than those who served only in peacetime. That intention is carried out, in part, by providing veterans of wartime service with a presumption of soundness that is more difficult for the government to rebut. The very existence of separate statutes containing different language strongly indicates [that] Congress intended a meaningful difference between the two.

Reply Br. at 5. The appellant's reasoning on this point is unexceptionable.

Prior to 1958, both the wartime and the peacetime presumptions of soundness were contained in Veterans' Regulation No. 1(a) (Reg. 1(a)). 38 U.S.C. app. ch. 12 (West 1942); *see generally Akins v. Derwinski*, 1 Vet.App. 228, 231 (1991). As of 1942, the wartime presumption was contained in part I of Reg. 1(a), which was entitled "Pensions to Veterans and the Dependents of Veterans for

21

Disability or Death Resulting From Active Military or Naval Service During the Spanish-American War, Boxer Rebellion, Philippine Insurrection, and/or The World War".  Paragraph I(a) of part I listed the qualifications for a veteran to be considered to have had wartime service, including limiting such service to the dates of the conflicts listed in the heading of this part (and listing dates ranging from April 1917 to June 1921 for qualifying service in "The World War" (i.e., World War I)).  That presumption of soundness read:

> (b) That for the purposes of paragraph I(a) hereof every person employed in the active military or naval service for 90 days or more, shall be taken to have been in sound condition when examined, accepted, and enrolled for service except as to defects, infirmities, or disorders noted at time of the examination, acceptance, and enrollment, or where evidence *or medical judgment is such as to warrant* a finding that the injury or disease existed prior to acceptance and enrollment.

Reg. 1(a), Part I, para. I(b), 38 U.S.C.A. app. ch. 12 (emphasis added).  The peacetime presumption as of 1942 listed qualifications for "peacetime" service and contained a presumption of soundness virtually identical to the wartime presumption of soundness, with the exception of a requirement of "six months or more" of active military or naval service.  Reg. I(a), Part II, para. I(b), 38 U.S.C.A. app. ch. 12.

The wartime presumption of soundness was amended by Congress in 1943, in pertinent part, as follows:

> Sec. 9.
>
> . . . .
>
> Paragraph I(b), part I, Veterans Regulation Numbered 1(a), as amended, is hereby amended to read as follows:
>
> "(b) For the purposes of paragraph I(a) hereof every person employed in the active military or naval service shall be taken to have been in sound condition when examined, accepted, and enrolled for service except as to defects, infirmities, or disorders noted at time of the examination, acceptance, and enrollment, *or where clear and unmistakable evidence demonstrates* that the injury or disease existed prior to acceptance and enrollment and was not aggravated by such active military or naval service."

22

Pub. L. No. 78-144, § 9(b) (1943) (codified as 38 U.S.C. app. ch. 12) (emphasis added). This is the first statutory provision containing "clear and unmistakable evidence" and "aggravation", as was discussed in *Cotant*, 17 Vet.App. at 125, regarding the presumption of soundness. The legislative history accompanying this amendment described the purpose of the bill containing this amendment, as well as this particular amendment, as follows: "Briefly, the bill is designed to correct inequalities arising under existing law, with a view to simplifying adjudicative practices and administrative procedure by establishing uniform provisions wherever possible." H.R. Rep. No. 78-463 (1943), *reprinted in* 1943 U.S.C.C.A.N. 2159, 2160.

Both the wartime and peacetime presumptions of soundness were codified into title 38 of the U.S. Code in 1958. *See* Pub. L. No. 85-857, §§ 311, 332, 72 Stat. 1105, 1119, 1122-23 (codified at 38 U.S.C. §§ 311, 332 (1958)). Both presumptions were renumbered to their current designations in 1991 (section 1111 for the wartime presumption and section 1132 for the peacetime presumption). *See* Pub. L. No. 102-83, §5(a), (c)(1), 105 Stat. 406 (1991). (At that same time, section 353 was renumbered as section 1153. *Ibid.*) Apart from minor technical revisions that do not affect the language under consideration here, the current peacetime presumption is unchanged from its form in 1942, and the current wartime presumption is unchanged from its amended form in 1943. Obviously, therefore, both presumptions were also unchanged from their previous (1942 and 1943, respectively) forms in 1983, at the time of the Board decision now being collaterally attacked on the basis of CUE.

"'The starting point in interpreting a statute is its language.'" *Lee (Raymond) v. West*, 13 Vet.App. 388, 394 (2000) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)). As we recently explained:

> The "plain meaning [of a statute] must be given effect unless a 'literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 . . . (1994); *Fagan[ v. West]*, 13 Vet.App. [48,] 52 [(1999)]; *Curtis[ v. West]*, 11 Vet.App. [129,] 133 [(1998)]. "If the intent of Congress is clear, that is the end of the matter". *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed. Cir. 1994) (quoting *Chevron, U.S.A., Inc. v. Natural*

23

*Resources Defense Council, Inc.*, 467 U.S. 837, 842 . . . (1984)),
*aff'ing* 4 Vet.App. 141 (1993) (mem.).

*Lee (Raymond)*, *supra*. Each "part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." *Meeks v. West*, 12 Vet.App. 352, 354 (1999) (internal quotation and citation omitted); *see also Cottle v. Principi*, 14 Vet.App. 329, 334 (2001); *Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992). This Court has previously held:

> "[I]t [is] fundamental that a section of a statute should not be read in isolation from the context of the whole act, and that in fulfilling our responsibility in interpreting legislation, 'we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy.'"

*Moreau v. Brown*, 9 Vet.App. 389, 396 (1996) (quoting *Richards v. United States*, 369 U.S. 1, 11 (1962) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285 (1956))), *aff'd*, 124 F.3d 228 (Fed. Cir. 1997). Under *Chevron,* the Court must defer to permissible agency constructions of a statute, if "Congress has not directly addressed the precise question at issue." *Chevron*, 467 U.S. at 843; *see also Barnhart v. Walton,* 535 U.S. 212, 217-18 (2002). A competing principle of statutory construction is that, where a statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. at 118; *see also Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc) (applying *Brown v. Gardner* principle to rule in appellant's favor on question of statutory interpretation). The following analysis addresses the application of these competing principles for interpreting ambiguous statutory language. *See Disabled Am. Veterans v. Sec'y*, 327 F.3d 1339, 1344 (Fed. Cir. 2003) (recognizing tension between "*Chevron* deference" and *Gardner* "interpretati[ve] doubt" resolution (citing *NOVA v. Secretary*, 260 F.3d 1365, 1378 (Fed. Cir. 2001))).

An application of the plain meaning of section 1111 would ***not*** operate in the manner described by the appellant; nothing in the expression "where clear and unmistakable evidence demonstrates", standing alone, would operate to exclude medical-judgment evidence as the sole source of the "clear and unmistakable evidence". *Cf.* NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION [hereinafter SUTHERLAND'S] § 45:09 (6th ed. 2000) ("[k]nowing the purpose behind the statute could help the court decode ambiguous text, but first there must be some

ambiguity"). Therefore, in order to evaluate the appellant's argument, it must be assumed that he is arguing that a literal application of the statute that permitted reliance solely on medical-judgment evidence would "produce a result demonstrably at odds with the intention of its drafters", *Gardner*, *supra*, or an absurd result, *see United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68-69 (1994); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998); *Simmons v. Principi,* 17 Vet.App. 104, 114 (2003); *Thayer v. Principi*, 15 Vet.App. 204, 210 (2001); *Cottle*, 14 Vet.App. at 334; *Faust v. West*, 13 Vet.App. 342, 350 (2000); *Trilles v. West*, 13 Vet.App. 314, 324 (2000) (en banc); *Davenport v. Brown*, 7 Vet.App. 476, 483-84 (1995); *Conary v. Derwinski*, 3 Vet.App. 109, 111-12 (1992) (per curiam order) (Steinberg, J., concurring).

In this context, the appellant, in his effort to demonstrate that "Congress acted intentionally" in the manner he describes, refers to no legislative or regulatory history or caselaw to support his position. In fact, the only authority that he cites for his arguments regarding congressional intent is a recitation of the text of the 1943 amendment to the wartime presumption and a comparison of the plain language of the wartime and peacetime presumptions. Br. at 17-18. Although this comparison is not without some persuasiveness, it does not, without any buttressing authority, show an intention of the drafters that is sufficiently clear to overcome the *Gardner* "plain meaning" rule noted above, as quoted in *Lee (Raymond)*, *supra*.

I agree that, in giving meaning to the words of the section 1111 presumption, attention must be given to the fact that a different standard is contained in the parallel provision of section 1132. *See* SUTHERLAND'S §§ 46:05 ("A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretation to the one section to be construed."), 46:06 ("when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended"; "[w]hile every word of a statute must be presumed to have been used for a purpose, it is also the case that every word excluded from a statute must be presumed to have been excluded for a purpose"); *see also Cottle*, *Meeks, Moreau*, and *Talley*, all *supra*.

The appellant argues that the mere difference in language, brought about by the 1943 amendment of the wartime presumption, signifies on its face an intent by Congress "to treat veterans

of wartime service more favorably than those who served only in peacetime . . . by providing veterans of wartime service with a presumption of soundness that is more difficult for the government to rebut." Reply Br. at 5. The appellant also argues that this heightened standard is accomplished, at least "in part", by not allowing medical-judgment evidence, standing alone, to be sufficient evidence to rebut the wartime presumption, and that this heightened standard is evidenced by the excision of the phrase "or medical judgment" from the wartime-presumption provision. *See* Br. at 18; *see also* Reply Br. at 5. The appellant's argument fails for two reasons: First, he provides no other evidence that his interpretation does, in fact, accurately reflect the will of Congress; and, second, a virtually identical argument regarding the construction of section 1111 has already been considered and rejected by the Court in *Adams v. Principi*, 13 Vet.App. 453, 456 (2000).

Giving full effect to the 1943 change in language, it is clear that Congress created a standard for the wartime presumption that differs from the peacetime presumption. This standard ("clear and unmistakable evidence") is more difficult to meet than the peacetime-presumption standard of "where evidence or medical judgment is such as to warrant a finding that the disease or injury existed before acceptance and enrollment." Reg. I(a), Part II, para. I(b), 38 U.S.C.A. app. ch. 12. Furthermore, there is no evidence of a clear congressional intent to override the plain-meaning statutory language in section 1111.

The clearly expressed purpose of the 1943 amendment to the wartime presumption was to extend this presumption to veterans of World War II. *See* H.R. Rep. No. 78-463 (1943), *reprinted in* 1943 U.S.C.C.A.N. 2159, 2160 ("[s]ections 9 to 13, inclusive, contain provisions applying to World War II veterans, the presumption of soundness and rebuttable presumption of service connection for chronic diseases"); *see also* Pub. L. No. 78-144 (1943) (codified as 38 U.S.C. app. ch. 12). This was done because eligibility for the wartime presumption was strictly limited to only those veterans of the specifically enumerated wartime service, which did not, at that time, include service during World War II. *See ibid.* The legislative history does **not** address, however, the addition of the term "clear and unmistakable evidence" and the excision of the term "medical judgment". Given the preexisting difference in treatment of the presumptions for wartime versus peacetime veterans (i.e., qualifying service of 90 days versus six months), it seems reasonable to

26

conclude, as the appellant argues, that this change was made with the purpose of providing veterans of wartime service with a presumption that is more difficult to rebut.

It does **not**, however, follow that this heightened standard was to be effectuated by diminishing the role of medical-judgment evidence in rebutting this presumption. It must be recognized that, because medical conditions are involved in these claims, it would be absurd to conclude that medical judgment has no role or indeed cannot play a conclusive role in making a determination under this provision. *See generally X-Citement Video, Inc.*, *Timex V.I., Inc.*, *Simmons, Thayer*, *Cottle*, *Faust*, *Trilles*, *Davenport*, and *Conary*, all *supra*. To the contrary, an interpretation that medical-judgment evidence is now **encompassed within** the rubric of "clear and unmistakable evidence" gives full effect to the apparent clear intent of Congress to provide for a more stringent standard for rebutting the wartime presumption. Simply put, medical-judgment evidence, standing alone, **may** in fact be used to rebut the wartime presumption, **so long as** that evidence rises to the level of "clear and unmistakable evidence". Although it is true that under *Brown v. Gardner* "interpretative doubt is to be resolved in the veteran's favor", 513 U.S. at 118, I believe that that cannon of construction is more aptly stated as prescribing that interpretative doubt must be resolved in favor of the claimant where there are competing **reasonable** interpretations of an ambiguous statutory provision. Here, the appellant has presented what I have found is not a reasonable interpretation of the statute. The Secretary's interpretation of the statutory provision being a reasonable one, it is thus entitled to deference on this point. *See Chevron*, *supra*.

The appellant's argument also seems to contravene the Court's analysis in *Adams*:

> The appellant argues in part that any medical opinion evidence is insufficient as a matter of law to rebut the 38 U.S.C. § 1111 presumption of soundness . . . . The Secretary replies that the Court's caselaw indicates that the use of medical evidence is contemplated for purposes of rebutting the presumption of sound condition . . . . [T]he Court agrees with the Secretary. The Court notes that nothing in the language of section 1111 precludes utilization of such medical evidence. Indeed, the Secretary's implementing regulation, 38 C.F.R. § 3.304(b) (1999), as the Secretary indicates, clearly calls for the use of such medical evidence. *See* 38 C.F.R. § 3.304(b)(1) (determinations whether evidence clearly and unmistakably rebuts the presumption of soundness should be based on medical judgment, accepted medical principles, history with regard to clinical factors

pertinent to basic character, origin, development of injury or disease, and "thorough analysis of the evidentiary showing and careful correlation of all material facts, with due regard to accepted medical principles pertaining to the history, manifestations, clinical course, and character of the particular injury or disease or residuals thereof"); *see also Harris v. West*, 203 F.3d 1347 (Fed.[]Cir. 2000) ("there is no absolute rule in the statute, the regulation, or the case law requiring [contemporaneous clinical evidence or recorded history] before the presumption [of sound condition] may be rebutted," and post[]service physician opinion may constitute [the] requisite clear and [unmistakable] evidence) . . . .

*Adams*, 13 Vet.App. at 456. In an attempt to distinguish *Adams*, the appellant states: "Even though 38 C.F.R. § 3.304(b) 'clearly calls for the use of such evidence,' *Adams*[, *supra*], that administrative regulation cannot override the intent of Congress as expressed in statutes." Reply Br. at 5. As explained above, however, there is in fact no clear congressional intent to ban or to limit the use of medical-judgment evidence in rebutting this presumption. The appellant further attempts to distinguish *Adams* by stating: "It is the duty of this Court to say what the law is by harmonizing the statutory scheme, and the Court did not harmonize 38 U.S.C.[] § 1111 with 38 U.S.C.[] § 1132 in *Adams*." Reply Br. at 5. My review of the full statutory scheme, however, does not convince me that the appellant is correct as to Congress' purpose in enacting the former statutory provisions.

### C. Miller v. West *Arguments*

The appellant cites *Miller v. West*, 11 Vet.App. 345, 348 (1998), for the proposition that "[a] bare conclusion, even one written by a medical professional, without a factual predicate in the record does not constitute clear and unmistakable evidence sufficient to rebut the statutory presumption of soundness." Br. at 13. This restatement of *Miller*'s holding is accurate, but that proposition does not assist the appellant on the facts of his case. He contends, incorrectly in my view, that the Medical Board report "is completely conclusory with regard to its finding as to aggravation." Br. at 19. In *Miller*, the Court was concerned with a medical report that was "not supported by any contemporaneous clinical evidence or recorded history in th[e] record." *Miller*, *supra*. Here, in contrast, the Medical Board report at issue did state a history of the appellant and reflected at least examination of x-rays as well as a general physical examination. R. at 24. Furthermore, the November 1999 BVA decision found that other evidence, including Dr. Scott's letter (R. at 80), also

28

supported the finding of no aggravation. R. at 8. Therefore, unlike in *Miller*, the Medical Board report does not stand alone as the basis for a finding of clear and unmistakable evidence. Finally, in any event, there is not enough evidence in support of the appellant's position so as to find that the November 1999 BVA decision was arbitrary or capricious. *See* 38 U.S.C. § 7261(a)(3)(A); *Link, Eddy,* and *Russell,* all *supra*.