Ailean BERGER, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 95–112.

United States Court of Veterans Appeals.

Argued Jan. 17, 1997.

Decided March 21, 1997.

Anita Myerson, Cleveland, OH, and Stephanie Forester, Washington, DC, for appellant.

John D. McNamee, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and Thomas A. McLaughlin, Deputy Assistant General Counsel, were on the brief, for appellee.

Before KRAMER, FARLEY, and HOLDAWAY, Judges.

HOLDAWAY, Judge, filed the opinion of the Court. KRAMER, Judge, filed a concurring opinion.

HOLDAWAY, Judge:

The appellant, Ailean Berger, appeals an October 7, 1994, decision of the Board of Veterans' Appeals (BVA or Board) that (1) determined that a July 1969 administrative decision which denied the appellant recognition as the veteran's surviving spouse was not clearly and unmistakably erroneous and (2) determined that new and material evidence had been submitted to reopen the previously denied claim and that the evidence supported recognition of the appellant as the surviving spouse of the veteran for VA benefit purposes. The appellant appeals only that part of the Board's decision which found that the July 1969 administrative decision did not contain clear and unmistakable error (CUE). The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the decision of the Board.

## I. FACTS

The veteran, Andrew C. Berger, had active military service from May 1946 to April 1948. The veteran and the appellant married in 1950. The veteran left the appellant in 1955 while she was pregnant with their fourth child. He was subsequently arrested and charged with neglecting his dependent wife. The appellant and the veteran reconciled and separated several times. The veteran began living with another woman, Georgia Hereford (also known as Georgia Mae Berger), but periodically returned to live with the appellant or spend the night with her. The veteran and the appellant separated for what turned out to be the last time around December 1957 when the appellant was approximately four months pregnant. In May 1958, the appellant gave birth to their fifth child. Georgia Hereford gave birth to the first of her four children fathered by the veteran in July 1958. In 1960 and 1961, the appellant gave birth to children who were not fathered by the veteran. The appellant has stated that she never lived with another man or held herself out as the wife of another man, and there is no evidence in the record to the contrary. At the time of the veteran's death in 1967, the appellant and the veteran had not lived together for many years, but they were not divorced or legally separated.

The appellant filed a claim for death pension benefits in May 1968 and stated in her application that the cause of their separation was "cruelty and incompatibil[ity]." She reported that the veteran had failed to support her, repeatedly subjected her to physical abuse, and threatened to kill her. She submitted statements from witnesses, who corroborated the physical abuse, and other supportive evidence. Georgia Hereford also filed a claim for widow's benefits. Eventually, VA recognized five of the appellant's children and four of Georgia Hereford's children as offspring of the veteran, and recognized the appellant as the veteran's legal spouse at the time of his death. Georgia Hereford was denied recognition as the veteran's common law wife and widow.

Nevertheless, in July 1969, VA disallowed the appellant's claim for death pension benefits. Although she was recognized as the veteran's legal widow, she was denied recognition as a widow for VA purposes. In 1969, 38 U.S.C. § 101(3) defined the term "widow" as

... a woman who was the wife of a veteran at the time of his death, and who lived with him continuously from the date of marriage to the date of his death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the wife) and who has not remarried or (in cases not involving remarriage) has not since the death of the veteran, and after enactment of the 1962 amendment to this paragraph, lived with another man and held herself out openly to the public to be the wife of such other man.

The regulations defined "widow" as

a person[ ] whose marriage to the veteran meets the requirements of § 3.1(j) and who was the lawful wife of the veteran at the time of his death and

(1) Who lived with him continuously from the date of marriage to the date of his death except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the wife and

(2) Who has not remarried or (in cases not involving remarriage) has not since the death of the veteran and after September 19, 1962, lived with another man and held herself out openly to the public to be the wife of such other man.

38 C.F.R. § 3.50(b) (1969). The requirement of continuous cohabitation was addressed in 38 C.F.R. § 3.53 (1969):

(a) *General.* The requirement that there must be continuous cohabitation from the date of marriage to the date of death of the veteran will be considered as having been met when the evidence shows there was no separation due to the fault of the widow. Temporary separations which ordinarily occur, including those caused for the time being through fault of either party, will not break the continuity of the cohabitation.

(b) *Findings of fact.* The statement of the widow as to the reason for the separation will be accepted in the absence of contra-

dictory information. If the evidence establishes that the separation was by mutual consent and that the parties lived apart for purposes of convenience, health, business, or any other reason which did not show an intent on the part of the widow to desert her husband, the continuity of the cohabitation will not be considered as having been broken.

In addition, the VA ADJUDICATION PROCEDURE MANUAL, M21–1 [hereinafter MANUAL M21–1] at the time had a provision referred to as the "birth by another" rule.

The birth of a child to the claimant as the result of her relations with another man will be accepted as proof of lack of continuous cohabitation within the meaning of the law in the absence of evidence that the veteran condoned the claimant's conduct.

MANUAL M21–1 § 8.11(c)(4) (1969).

The appellant was denied recognition as the veteran's widow because she and the veteran were not living together at the time of his death and she was "not without fault as to the continuation of the separation, since [she] subsequently had two other children." The administrative decision denying her claim in 1969 stated the following:

*Discussion:* The requirements that there must be continuous cohabitation from the date of marriage to the date of death of the veteran will be considered as having been met when the evidence shows that there was no separation due to the fault of the widow.

Regardless of the reasons for separation, the claimant is not without fault where a child is born to her as the result of her relations with another man, in the absence of evidence that the veteran condones her conduct.

. . . .

*Conclusion:* The evidence establishes that the widow is not without fault in the separation from the veteran at the time of his death and therefore she is not entitled to any death benefits as the unremarried widow.

The decision did not discuss the fault of the veteran or address his physical abuse, his abandonment of the appellant, or his relationship with Georgia Hereford. The appellant did not appeal.

In June 1990, the appellant reapplied for VA benefits as the widow of Andrew C. Berger, and her claim was again denied. She filed a Notice of Disagreement and testified at a personal hearing before a hearing officer. After the hearing officer returned an unfavorable decision, she completed her appeal to the Board, submitted additional evidence, and appeared with counsel at a March 1993 hearing before a member of the Board. In a brief presented to the Board, she argued that there was CUE in the 1969 decision and that there was new and material evidence to reopen her claim for death benefits.

The Board notified the appellant that the Board intended to rely upon a precedent opinion from VA General Counsel as mandatory authority that this Court's holding in *Gregory v. Brown,* 5 Vet.App. 108 (1993) does not apply retroactively to prior "final" adjudicated claims. *See* VA Gen. Coun. Prec. 9–94 (March 25, 1994). This Court's opinion in *Gregory* had the potential to affect the outcome of the appellant's claim, because in *Gregory,* this Court reviewed the provisions in 38 U.S.C. § 101(3) and 38 C.F.R. §§ 3.50, 3.53 (1992) concerning the continuous cohabitation requirement for a surviving spouse. *See Gregory, supra.* In *Gregory,* this Court stated that "the surviving spouse is deemed to have continuously cohabited with the veteran if the separation was not due to the fault of the surviving spouse." *Gregory,* 5 Vet.App. at 112. The Court determined that the without-fault requirement is not a continuing requirement and that "fault or the absence of fault is to be determined based on an analysis of conduct at the time of the separation." *Ibid.* In her response to the general counsel opinion, the appellant argued that the 1969 decision could be reversed on the basis of CUE without retroactive application of *Gregory,* and she argued alternatively that *Gregory* could be applied retroactively if the claim was reopened on a new and material evidence basis.

In the decision on appeal, the Board found that the appellant had submitted new and material evidence to reopen her claim for

widow's benefits, and the Board concluded that the Court's analysis in *Gregory, supra,* applied to her reopened claim. The Board granted the appellant recognition as a surviving spouse, finding that there was no evidence that she was at fault at the time of her final separation from the veteran. Instead, the Board found that the veteran was at fault. The Board, however, also determined that the July 1969 administrative decision did not contain CUE. The Board reasoned that at the time of the 1969 decision, the "birth by another" rule in the Manual M21–1 created a presumption of lack of continuous cohabitation and the presumption was not rebutted by other evidence. The adjudicator, therefore, concluded that the appellant did not satisfy the requirement for continuous cohabitation under the law at that time.

## II. ANALYSIS

▮ We begin with the legal truism that this Court may not review directly or indirectly the final VA regional office (RO) decision made in 1969. *See* 38 U.S.C. § 7252 ("The Court of Veterans Appeals shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals."). Our review is limited to determining whether the BVA's decision was arbitrary or capricious in finding there was no CUE as to that adjudication. *See* 38 C.F.R. § 3.105(a) (1996); *Russell v. Principi,* 3 Vet.App. 310 (1992) (en banc). Moreover, the appellant, who always bears the burden of persuasion on appeals to this Court, bears an extra-heavy burden when the appeal is a collateral attack, in the form of a CUE claim, concerning a final decision. A final decision is entitled to a strong presumption of validity. *See Fugo v. Brown,* 6 Vet.App. 40 (1993). To the extent that the attack on a final decision is based on a disagreement with how the adjudicator weighed the facts, then it cannot constitute CUE. *See Russell, supra.* The error must be such that the appellant is able to demonstrate, bearing in mind the extra burden of persuasion there is to do so, that but for the error the result would have been "clearly and unmistakably" different.

▮ With that general legal framework in place we turn now to the application of those principles to the facts and the law extant at the time of the 1969 adjudication to determine whether CUE was inherent in that adjudication. The issue before the adjudicator in 1969, as he perceived it, was to determine "if the widow [the current appellant] was without fault in the lack of continuous cohabitation with the deceased veteran." This was amplified in a letter to Mrs. Berger informing her that the claim was disallowed as she "was not without fault as to the *continuation* of the separation, since you subsequently had two other children." (Emphasis supplied.) The facts relied upon in the decision, which were part of the record before the adjudicator, included the widow's statement that "she did not live continuously with the veteran from the date of marriage to the date of his death for reasons of cruelty and incompatibility." It is clear therefore that the adjudicator was cognizant of the conduct of the veteran in causing the onset of the separation and that he considered that fact in his decision. Other facts before the RO included a prior separation and reconciliation and the fact that subsequent to the onset of the so-called last formal separation there had been frequent brief visits by the veteran with his family, to include an unspecified number of times when he spent the night with the appellant. There was also the fact of the birth of two children by another man during the final separation.

It is apparent that in considering the fact of these births, the adjudicator was following a provision of the Manual M21–1 (now no longer in effect) concerning the effect of "birth by another." In this regard, we summarily reject the argument advanced by the appellant, if we understand it correctly, that this provision related to "cohabitation" but not to "fault." In the statute implemented by the Manual M21–1, the concept of fault is inextricably intertwined with the requirement of cohabitation. To the extent the putative "fault" of the widow fostered or, as the RO determined in this case, perpetuated the state of noncohabitation, then it was to be considered. In short, as we read the RO's decision, the adjudicator found, as a fact, that although the veteran's conduct caused the onset of the separation, the widow's "fault" in giving birth to two children by another per-

petuated the separation by inhibiting any reasonable chance of reconciliation, as had occurred in the past.

Such a decision *now* would possibly be error under the new interpretation of law that this Court made in *Gregory v. Brown*, where it held, inter alia, that under the circumstances of that case the "without-fault requirement was [not] a continuing one," i.e., it did not extend beyond the time "of the separation." *Gregory*, 5 Vet.App. at 112. The Court defined "time of separation," apparently, to mean the date of the onset of the separation. *Ibid.* There was no exegesis or citation of authority for this interpretation. However that may be, the facts of the *Gregory* case are so markedly different from the facts in this case that it is by no means certain that the *Gregory* case would be dispositive when applied to the peculiar facts of this case. In any event how the Court would, or will, construe "time of separation" in cases with these kinds of facts is a matter of pure speculation. It is by no means clear, as noted above, that *Gregory* would be held dispositive. We need not decide that, however, as we are only concerned with the law as it existed in 1969 and whether the RO's interpretation of *that* body of law was clearly and unmistakably erroneous. A new rule of law from a case decided in 1993 could not possibly be the basis of an adjudicative error in 1969. If a simple recitation of the time sequence does not make that clear, then the regulation that establishes CUE does by precluding new interpretations of the law from being the basis of revising decisions. *See* 38 C.F.R. § 3.105. We do take this occasion to specifically hold that opinions from this Court that formulate new interpretations of the law subsequent to an RO decision cannot be the basis of a valid CUE claim.

This leaves us with only one theory upon which CUE could be based: If the RO's interpretation of the plain meaning of the law was clearly and unmistakably erroneous in defining separation as including the period of time after its onset, then there may be a basis for a CUE claim. On the other hand, if it was a plausible interpretation, in the context of the body of law that existed in 1969, then there is no basis for such a claim. We find it to be a plausible interpretation of the law, circa 1969, and a plausible application of that law to the facts that were before the adjudicator. There simply is nothing in the plain language of the statute, or its implementing regulation, that precluded the RO in 1969 from defining separation as encompassing the entire duration of the separation and not merely the date that the separation began. This is particularly true in light of the facts that were before the RO in 1969. The statute was, and still is for that matter, susceptible of differing interpretations depending, as is true in most cases, on the facts that are to be applied to the law. Certainly this is, at the least, a case where reasonable minds could differ concerning the "correct" interpretation. A fortiori, the error, if any, that occurred in the 1969 adjudication was neither clear nor was it unmistakable. It follows that the Board in determining that there was not CUE in the 1969 adjudication acted well within its discretion. Therefore, the decision is AFFIRMED.

KRAMER, Judge, concurring:

I disagree with the majority's questioning of the meaning and application of *Gregory v. Brown*, 5 Vet.App. 108 (1993). Its meaning is clear and requires no interpretation. Simply put, *Gregory* precludes VA from denying surviving spouse status on the basis of post-separation fault unrelated to the reason for separation. The *Gregory* rule applied to the facts of this case today would result in the appellant's prevailing.

That said, the majority's construction of 38 C.F.R. § 3.105 is correct in that the language of section 3.105 precludes the retroactive application of *Gregory*. Without *Gregory*, VA's prior use of post-separation fault unrelated to the reason for separation was "substantially justified" and "reasonable in law" (*see Stillwell v. Brown*, 6 Vet.App. 291, 304 (1994)) and thus, by definition, could not constitute CUE.