KRAMER, Chief Judge,
dissenting:
Because, for the reasons set forth below, I disagree with the majority’s analysis and conclusion that a remand is proper in this clear and unmistakable error (CUE) case, I respectfully dissent.
A prior VA regional office (RO) decision must be reversed or revised where evidence establishes CUE. 38 U.S.C. § 5109A; 38 C.F.R. § 3.105(a) (2003). For CUE to exist either (1) the correct facts in the record were not before the adjudicator or (2) the statutory or regulatory provisions extant at the time were incorrectly applied. See Damrel v. Brown, 6 Vet.App. 242, 245 (1994). In addition, “the error must be ‘undebatable’ and of the sort ‘which, had it not been made, would have manifestly changed the outcome at the time it was made.’ ” Damrel, 6 Vet.App. at 245 (quoting Russell v. Principi, 3 Vet.App. 310, 313-14 (1992) (en banc)); see also Bustos v. West, 179 F.3d 1378, 1380 (Fed.Cir.1999) (expressly adopting “manifestly changed the outcome” language in Russell, supra). “In order for there to be a valid claim of [CUE], ... [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated.” Russell, 3 Vet.App. at 313. That is because, “even where the premise of error is accepted, if it is not absolutely clear that a different *244 result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable.” Fugo v. Brown, 6 Vet.App. 40, 43-44 (1993). On appeal of a Board of Veterans’ Appeals (Board or BVA) determination that there was no CUE in a prior final RO decision, the Court’s review is limited to determining whether the Board’s conclusion is “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law” (38 U.S.C. § 7261(a)(3)(A)) and whether it is supported by an adequate statement of “reasons or bases” (38 U.S.C. § 7104(d)(1)). See Eddy v. Brown, 9 Vet.App. 52, 57 (1996); Damrel, 6 Vet.App. at 246; Russell, 3 Vet.App. at 315; see also Beyrle v. Brown, 9 Vet.App. 377, 381-84 (1996); Mason v. Brown, 8 Vet.App. 44, 52-53 (1995).
In the instant CUE case, based on the evidence of record in June 1976, the appellant has failed to demonstrate that there could have been CUE in the June 1976 RO decision to deny service connection for hyperthyroidism or hypothyroidism. See Link v. West, 12 Vet.App. 39, 45 (1998); Crippen v. Brown, 9 Vet.App. 412, 420 (1996) (noting that 38 U.S.C. § 5104(b) was added effective February 1, 1990, to require RO to specify in decision evidence considered and reasons for disposition).
First, there was evidence of record in June 1976 to support the RO’s determination that the appellant’s hyperthyroidism existed prior to service. See Record (R.) at 259 (June 1976 RO decision in which RO had concluded that thyroid condition, inter alia, preexisted service). Specifically, in the August 1975 hospital discharge summary, the physician had stated that. the “[then-p]resent [ijllness” (R. at 57) had begun one year prior to the appellant’s June 1975 hospital admission, i.e., approximately 11 months prior to the appellant’s entry into service (see R. at 33). See Crippen, supra; Fugo, 6 Vet.App. at 43-44 (“[I]f it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable.”); Russell, 3 Vet.App. at 313-14 (as to requirements of undebata-ble error and manifest outcome change). Moreover, at the time of the June 1976 RO decision, the RO was not precluded from using its own medical judgment in making its determination, and the Court notes that a medical doctor, inter alia, signed the June 1976 RO decision. See R. at 259; see also Colvin v. Derwinski, 1 Vet.App. 171, 172 (1991) (to reject expert medical conclusions, Board must have basis other than its own unsubstantiated opinion to support its decision); Berger v. Brown, 10 Vet.App. 166, 170 (1997) (“opinions from this Court that formulate new interpretations of the law subsequent to an RO decision cannot be the basis of a valid CUE claim”).
Second, under 38 C.F.R. § 3.306(a) as extant in June 1976, a preexisting injury or disease could have been service connected if “there [was] an increase in disability during such service.” 38 C.F.R. § 3.306(a) (1975). As to any increase in the appellant’s hyperthyroidism, it is not entirely clear from the language of § 3.306(a) (see Damrel, 6 Vet.App. at 245 (error must be undebatable)) whether “during such service” meant “must have endured until discharge from service” or “at any point in time during service.” Although perhaps not determinative on this issue because it was not in existence at the time of the June 1976 RO decision, this Court’s case-law, at a minimum, is instructive as to any ambiguity that may have existed on this issue. See Hunt v. Derwinski, 1 Vet.App. 292, 296-97 (1991) (temporary flare-ups during service of preexisting disease are not sufficient to be considered in-service aggravation unless underlying condition, as contrasted with symptoms, is worsened); R. at 259 (June 1976 RO had concluded *245 that appellant’s thyroid condition, inter alia, “was not aggravated [by service], but actually improved in service with treatment”). If establishing an increase in disability under § 3.306(a) required that the disability endure until discharge from service, there was evidence of record in June 1976 to support a determination that the appellant’s hyperthyroidism had not so endured. See R. at 200 (February 1976 service discharge examination report on which examiner had indicated, inter alia, that hyperthyroidism was “controlled”); Fugo and Russell, both supra. Even assuming that, at the time of the June 1976 RO decision, showing an increase in disability under § 3.306(a) did not require that the disability endure until discharge from service, the evidence of record in June 1976 was not necessarily all in the appellant’s favor as to whether a nonen-during increase had occurred. See R. at 138, 142, 166, 169 (treatment notes during appellant’s in-service hospitalization indicating that appellant was out of hospital on passes of varying lengths, including pass for overnight fishing trip), 173 (discharged from hospital to duty); Crippen, 9 Vet.App. at 422 (if all evidence at time of RO decision “militated in support of the claim,” that could be basis for finding CUE in RO’s denial of claim); see also Fugo and Russell, both supra.
Third, as to whether the existence of hypothyroidism either was an aggravation of the appellant’s hyperthyroidism or itself was incurred in service, 38 C.F.R. § 3.306(b)(1) as extant in June 1976 provided:
The usual effects of medical and surgical treatment in service, having the effect of ameliorating disease or other conditions incurred before enlistment, including postoperative scars, absent or poorly functioning parts or organs, will not be considered service connected unless the disease or injury is otherwise aggravated by service.
38 C.F.R. § 3.306(b)(1) (1975).
In this regard, three pieces of evidence before the June 1976 RO could have been construed as indicating that the development of hypothyroidism was a “usual effect!]” (38 C.F.R. § 3.306(b)(1)) of the treatment of the appellant’s hyperthyroidism. See Fugo and Russell, both supra. Specifically, of record in June 1976 were, inter alia, the August 1975 in-service hospital discharge summary in which the examiner had “recommended that [the appellant] be observed for signs of decreasing thyroid activity” (R. at 58); a service medical record (SMR) in which the examiner had indicated that the appellant’s hypothyroidism was secondary to his in-service I-131 treatment (R. at 185; see R. at 194 (same effect)); and an SMR in which the examiner had recorded that the appellant’s hypothyroidism was “as suspected” (R. at 186). See Crippen, 9 Vet.App. at 422; see also Russell, 3 Vet.App. at 313 (disagreement with manner in which evidence was weighed is not CUE).
Lastly, other than the evidence described above, there was no other evidence of record in June 1976 to demonstrate that the appellant’s hyperthyroidism had been “otherwise aggravated” (38 C.F.R. § 3.306(b)(1)), and the appellant has not presented any authority as to the meaning of that term. See R. at 58, 138, 142, 166, 169, 173, 185, 186, 194, 200; Crippen, Fugo, and Russell, all supra.
Thus, the Court should conclude that the appellant has not demonstrated that the Board’s determination, in the decision on appeal, that there was no CUE in the June 1976 RO decision in which the RO had denied service connection for the appellant’s thyroid condition was “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 38 *246 U.S.C. § 7261(a)(3)(A); see Russell, 3 Vet.App. at 315. Further, given that the appellant has not shown, based on the evidence of record in June 1976, that there could have been CUE in the June 1976 RO decision, any inadequacy in the BVA’s statement of reasons or bases for its decision as to this CUE matter would be nonprejudicial because no such CUE claim could have been granted on any of the bases that the appellant has advanced. See Eddy, 9 Vet.App. at 58-59 (concluding that “any inadequacy in the Board’s statement of ... reasons or bases for its decision on [the appellant’s CUE] claim would be nonprejudicial error because a CUE claim could not have been granted on any of the theories advanced by the appellant”); see also Link, supra. Finally, as to the interpretive questions regarding 38 C.F.R. § 3.306(b)(1) as extant in June 1976 that the majority has identified (ante at 241), I would note that, if it is unclear whether an interpretation, which would form the basis for CUE, was correct in 1976, such an interpretation cannot be relied upon to demonstrate CUE. See Berger, 10 Vet.App. at 170. Accordingly, the Court should affirm the August 2001 Board decision.