Citation Nr: 1220791 
Decision Date: 06/14/12 Archive Date: 06/22/12

DOCKET NO. 08-25 281 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Whether a September 18, 1992 rating decision, which did not grant service connection for the residuals of a head injury, contained clear and unmistakable error (CUE). 


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

D. Rogers, Associate Counsel
INTRODUCTION

The Veteran served on active duty from December 1986 to September 1991 and from June to August 1996. He was also a member of the Reserve.

This case came to the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veteran's Affairs (VA) Winston-Salem, North Carolina, Regional Office (RO).

In June 2005, a hearing was held before a hearing officer at the RO; a transcript of that hearing is associated with the claims folder.

In July 2009, the Veteran withdrew his request for a hearing for the issue on appeal. See 38 C.F.R. § 20.704(e) (2011). 

In March 2008, the Board found that new and material evidence had not been received to reopen the Veteran's claim of entitlement to an effective date earlier than October 28, 1997 for the grant of service connection for residuals of a head injury. In addition, the Board remanded the issue of entitlement to an effective date earlier than October 28, 1997 for the grant of service connection for residuals of a head injury based on CUE in prior rating actions for an issuance of a Statement of the Case and clarification as to which rating actions are claimed to contain CUE. The requested development was completed and the remand orders were substantially complied with. The case has now been returned to the Board for further appellate consideration. 

In May 2012, the Veteran submitted additional evidence directly to the Board, without a waiver of initial RO consideration of the evidence. This evidence consists of a duplicate copy of a VA Form 9 (substantive appeal) received in August 2008 in connection with the current appeal and a service personnel record dated during the Veteran's second period of active service. Given that the newly submitted evidence and argument is duplicative of the evidence and argument previously considered by the RO, or was created after the September 1992 rating decision at issue, it has no bearing on the CUE claim on appeal. Thus, a remand for RO review of the newly submitted evidence in connection with this claim is unnecessary.


FINDINGS OF FACT

1. The April 8, 1992 application for "pension" benefits, filed by the Veteran's father on his behalf due to the Veteran being in a coma following a March 18, 1992 motor vehicle accident which resulted in a severe brain injury is reasonably construed as a claim for nonservice-connected disability pension.

2. In a September 1992 rating decision, the RO assigned 10 percent nonservice-connected disability evaluations for a closed head injury and a hernia and denied the Veteran's original claim for nonservice-connected disability pension because it had not been not shown that the Veteran was unable to obtain substantially gainful employment due to nonservice-connected disability.

3. In a September 28, 1992 letter, the RO provided the Veteran with notice of the September 1992 decision denying entitlement to nonservice-connected disability pension and of his appellate rights. He did not timely appeal the September 1992 rating decision. 

4. On June 8, 1994, the RO received an Income-Net Worth and Employment Statement that indicated that the Veteran wished to reopen his previously denied claim for "NSC pension." 

5. In an October 1995 rating decision, the RO granted entitlement to nonservice-connected disability pension effective June 8, 1994, the date of claim to reopen, due to a showing that the Veteran was unable to obtain substantially gainful employment due to nonservice-connected disability of residuals of a traumatic brain injury following a March 18, 1992 motor vehicle accident. 

6. In an October 24, 1995 letter, the RO provided the Veteran with notice of the October 1995 decision granting entitlement to nonservice-connected disability pension and of his appellate rights. He did not timely appeal the October 24, 1995 rating decision. 

7. On October 28, 1997, the RO received a claim for service connection for residuals of a brain injury due to injury sustained in a March 18, 1992 motor vehicle accident that reportedly occurred during Reserve service. Evidence was submitted that showed he was on inactive duty for training on March 18, 1992.

8. In a March 1999 rating decision, the RO granted service connection for residuals of a brain injury, effective on November 28, 1997, determined to be the date of receipt of the claim for service connection.

9. Prior to the November 28, 1997 claim for service connection the Veteran did not assert, nor did the record contain, any evidence suggesting that the March 18, 1992 motor vehicle accident did or may have occurred during travel status to or from a period of or inactive duty training (INACDUTRA). 

10. The Veteran has not identified with requisite specificity an instance of CUE in the facts as known or the law as applied at the time of the RO's September 1992 decision sufficient to establish an undebatable error that would change the outcome of that decision. The law and pertinent facts known at the time were properly applied.


CONCLUSIONS OF LAW

1. The September 1992 rating decision denying entitlement to nonservice-connected disability pension is final. 38 U.S.C.A. §7105 (West 2002); 38 C.F.R. §§ 20.200 (2011).

2. CUE has not been found in the September 18, 1992 rating decision that did not grant service connection for the residuals of a head injury, and the criteria for an effective date earlier than October 28, 1997 for the establishment of service connection have not been met. 38 U.S.C.A. §§ 5109A, 5110 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.105, 3.400 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA)

The Veterans Claims Assistance Act of 2000 (VCAA), 38 U.S.C.A. §§ 5100, 5102, 5103, 5106, 5103A, 5107, 5126 (West 2002), is not applicable to a claim for revision or reversal of a final decision on the basis of CUE. See Livesay v. Principi, 15 Vet. App. 165 (Aug. 30, 2001) (en banc). 

Nevertheless, the Board acknowledges the Veteran's June 2010 request for a hearing in this matter. He stated that he would not be able to attend the requested hearing and requested that his representative appear to present his case before the Board. The Board notes that the purpose of a hearing is to permit the claimant to introduce into the record, in person, any available evidence which he considers material and any arguments or contentions with respect to the facts and applicable law which he considers pertinent. 38 C.F.R. § 3.103(c)(2). The claimant is expected to be present. Id. The Veterans Benefits Administration will not normally schedule a hearing for the sole purpose of receiving argument from a representative. Id. In this case, an Informal Hearing Presentation was received from the representative in April 2012. Thus, the Board finds that additional delay to schedule a hearing in which the Veteran is knowingly unable to attend is unnecessary and adjudicating the claim on the merits will not result in prejudice to the Veteran or his claim. 

Relevant Laws and Regulations

CUE is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that their results would have been manifestly different but for the error. See Fugo v. Brown, 6 Vet. App. 40, 43 (1993). 

In Russell v. Principi, 3 Vet. App. 310 (1992), the Court set forth a three-pronged test for determining when there is CUE present in a prior decision. These are (1) either the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied; (2) the error must be undebatable and of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed a the time of the prior adjudication in question. Russell v. Principi, 3 Vet. App. at 313-14. See also Bustos v. West, 179 F. 3d 1378, 1380-81 (Fed. Cir. 1999) (to prove CUE, a claimant must show that an error was outcome-determinative, an error that would manifestly have changed the outcome of the prior decision); Hines v. Principi, 18 Vet. App. 227, 235 (2004).

In Fugo v. Brown, 6 Vet. App. 40 (1993), the Court refined and elaborated on the test set forth in Russell. In Fugo the Court stated: CUE is a very specific and rare kind of 'error.' It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error...If a claimant-appellant wishes to reasonably raise CUE there must be some degree of specificity as to what the alleged error is and, unless it is the kind of error...that, if true, would be CUE on its face, persuasive reasons must be given as to why the result would have been manifestly different but for the alleged error. It must be remembered that there is a presumption of validity to otherwise final decisions, and that where such decisions are collaterally attacked, and a CUE claim is undoubtedly a collateral attack, the presumption is even stronger. Fugo, 6 Vet. App. at 43-44 (emphases added).

Thus, as a threshold matter, a claimant must plead CUE with sufficient particularity. Only if this threshold requirement is met does the Board have any obligation to address the merits of the CUE claim. See Phillips v. Brown, 10 Vet. App. 25 (1997) (distinguishing denial of CUE due to pleading deficiency and denial of CUE on merits); Luallen v. Brown, 8 Vet. App. 92 (1995).

The Court has also held that allegations that previous adjudications have improperly weighed or evaluated the evidence can never rise to the stringent definition of clear and unmistakable error. See Damrel v. Brown, 6 Vet. App. 242, 246 (1994).

Similarly, the Court has held that the VA's breach of its duty to assist cannot form a basis for a claim of clear and unmistakable error. See Tetro v. Gober, 14 Vet. App. 100, 109 (2000); Caffrey v. Brown, 6 Vet. App. 377, 382 (1994).

Significantly, with respect to the third prong of the test, the Board notes that, in Berger v. Brown, 10 Vet. App. 166 (1997), the Court has held that "opinions from this Court that formulate new interpretations of the law subsequent to [a VA] decision cannot be the basis of a valid clear and unmistakable error claim. Id. at 170. The Court reaffirmed this principle in Brewer v. West, 11 Vet. App. 228, 234 (1998) and Smith v. West, 11 Vet. App. 134, 137 (1998).

Indeed, in Brewer, the Court held that, although judicial decisions made during the course of an appeal are retroactively applicable to pending appeals, for purposes of adjudicating claims of CUE in a prior VA decision, "new" judicial interpretations of the law that were not issued at the time of the prior VA decision are not applicable. Id. at 234.

Analysis

At the outset, the Board notes that in response to the March 2008 remand that requested that the Veteran provide clarification as to which rating action(s) contain CUE, the Veteran returned a copy of the July 23, 2008 Statement of the Case and marked that he was arguing the September 1992 rating decision that denied nonservice-connected disability pension and did not grant service connection for the residuals of a head injury. 

In substance, in a December 2004 statement and at the June 2005 hearing, the Veteran and his current representative alleged that medical evidence and documentation submitted with the April 1992 initial application for pension benefits "might have mentioned" that the Veteran was returning from training at the time of the March 1992 motor vehicle accident that resulted in residuals of a brain injury, but VA failed to assist the Veteran in developing or obtaining associated information and evidence necessary to substantiate the claim. Thereafter, the Veteran testified that while his father may not have stated in the April 1997 application that the motor vehicle accident occurred while returning from military training, that fact was in the record because he personally submitted his military orders after submission of the April 1992 application. The Veteran has also argued that due to residuals of the March 1992 brain injury, he did not have the mental capacity to realize that his disability may be service connected until he was advised by a friend during his second period of active service which prompted the filing of the October 1997 claim for service connection. Finally, the Veteran asserts that at the time of the original claim for pension benefits, his father was elderly, without knowledge of how to properly file a claim for service connection, and he was allegedly incorrectly advised on how to file the claim by VA personnel. 

As a threshold matter, the Board finds in this case that the Veteran has not advanced arguments that can be found to constitute allegations of CUE of the requisite specificity. See Phillips; Luallen; supra.

After a careful review of the record before the RO in September 1992, the Board finds that there was a tenable basis for the RO's failure to grant service connection for the residuals of a head injury. In reaching this determination, the Board initially finds that the statutory and regulatory provisions at the time of the October 1992 rating decision were correctly applied.

At the time of the September 1992 rating decision, VA regulations provided that a claim by a veteran for compensation may be considered a claim for pension; and a claim by a veteran for pension may be considered to be a claim for compensation. 38 C.F.R. § 3.151 (a) (1992). The greater benefit will be awarded, unless the claimant specifically elects the lesser benefit. Id. 

Pension is a benefit payable monthly by VA because of nonservice-connected disability. 38 C.F.R. § 3.3 (2) (1992). Basic entitlement exists if a veteran is permanently and totally disabled from nonservice-connected disability not due to the veteran's own willful misconduct or vicious habits. 38 C.F.R. § 3.3 (2) (iv) (1992). 

Compensation means a monthly payment made by VA to a veteran because of service-connected disability. 38 C.F.R. § 3.4 (1992). Service connection means that the facts, shown by the evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 C.F.R. § 3.303 (1992). Active military service includes any period of inactive duty training during which the individual concerned was disabled or died from an injury incurred or aggravated in the line of duty. 38 C.F.R. § 3.6 (1992). Inactive duty training means duty (other than full-time duty) prescribed for Reserves by an authority designated by the Secretary concerned under 37 U.S.C.A. 206 or any other provision of law, and special additional duties authorized for Reserves by an authority designated by the Secretary concerned and performed by them on a voluntary basis in connection with the prescribed training or maintenance activities of the unit to which they are assigned. 38 C.F.R. § 3.6 (d) (1992). Any individual, when authorized or required by competent authority, assumes an obligation to perform inactive duty training and who is disabled or dies from injury incurred while proceeding directly to or returning directly from such inactive duty training, shall be deemed to have been on inactive duty training at the time the injury occurred. 38 C.F.R. § 3.6 (d) (1992). Whenever any claim is filed alleging that the claimant is entitled to benefits by reason of injury incurred while proceeding directly to or returning directly from such inactive duty training, the burden of proof shall be on the claimant. Id.

Review of the record as it was at the time of the September 1992 rating decision shows that on April 8, 1992, the Veteran's application for compensation and pension, completed by the Veteran's father on his behalf, was received at the RO. The April 1992 application showed that the Veteran's father "wish[ed] to file a claim for pension on behalf on his son" who was in a coma at a private medical facility following a motor vehicle accident on March 18, 1992. The application contained no information or evidence suggesting that the Veteran was in the Navy Reserve or traveling to or from any period of ACDUTRA or INACDUTRA at the time of the accident. In deed, the application form left the items pertaining to Reserve service blank, and it stated that the Veteran's last date of employment was September 22, 1991, the date he was discharged from active Navy service. 

Service records associated with the claims folder at the time of the September 18, 1992 rating decision contained the Veteran's DD Form 214 which showed that he was discharged from active service on September 22, 1991, with a reserve service obligation termination date of December 1994. Upon discharge, however, the Veteran was transferred to the Naval Reserve Personnel Center in New Orleans, Louisiana. There was no indication that he had been assigned to an active Reserve unit. The Veteran's service records also contained a letter received from the Veteran, dated August 24, 1992, that stated that as a member of the Inactive Ready Reserves, he wished to update the military on his physical and mental status. He stated that he was involved in a motor vehicle accident on March 18, 1992, "while still a member of the Naval Reserves." He went on to describe the impact that the auto accident had on his ability to function.

Post-service private treatment records pertaining to medical treatment and rehabilitation for the brain injury sustained during the March 18, 1992 motor vehicle accident were obtained and did not contain any information or evidence suggesting that the Veteran was traveling to or from military training at the time of the accident. Private treatment records pertaining to the accident merely stated that the Veteran was an unrestrained driver when his vehicle ran off of the road and struck a tree. Significantly, question of alcohol use was noted and lab reports confirmed a positive blood alcohol level (less than .02) sometime following the accident, despite the presence of two peripheral IVs prior to and upon his arrival to the hospital. 

The Veteran was afforded a VA neuropsychiatric examination in August 1992 whereby he reported involvement in a March 1992 motor vehicle accident when a tire allegedly blew out causing him to run off of the road and hit a tree. It was noted that a brain injury resulted in extensive difficulties, however, tremendous progress was shown in the private rehabilitation notes. Specifically, following rehabilitation, the Veteran was able to walk unlimited distances, speech and mental status had improved, and he was clearly understandable. There were still some concerns about periodic disorientation and poor insight into the situation. At the time of the August 1992 examination, he had no problems. He denied headaches, personality changes, and memory problems. He was going to school to become a nurse although he did have to take a semester off. Objective findings on mental status examination showed that the Veteran was oriented, alert, not depressed or anxious, but there was mild giddiness and some minimization of his difficulties. There was no paranoia, hallucinations, or delusions. Speech was normal without slurring or problems understanding or explaining himself. Diagnosis was a closed head injury with some residual neuropsychological difficulties, however, improvement was still expected. 

As noted, in an October 1992 rating decision, the RO denied the claim of entitlement to nonservice-connected disability pension because it had not been shown that the Veteran was unable to obtain substantially gainful employment due to nonservice-connected disability. Service connection was not considered as there was no indication that the injury was related to service. On September 28, 1992, the RO provided the Veteran with notice of the September 1992 rating decision and apprised him of his appellate rights. The Veteran did not appeal that decision and it is final. No other claim or contentions were timely filed.

A determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question, and not on subsequent determinations of record. Damrel v. Brown, 6 Vet. App. 242, 245 (1994). 

On this record, the Board finds that while there was evidence that the Veteran was a member of the Navy Reserves or Inactive Ready Reserves at the time of the March 1992 accident and the September 1992 rating decision, there simply was no information or evidence of record suggesting that the accident occurred while driving to or from any period of reserve training. Contrary to the Veteran's assertions, review of the information and evidence of record at the time of the September 18, 1992 rating decision does not show that any information or evidence was overlooked in adjudicating the Veteran's claim for pension benefits, and there was no evidence suggesting that the March 18, 1992 motor vehicle accident occurred during authorized travel to or from any period of ACDUTRA or INACDUTRA. 

The Veteran also argues that there was CUE in the September 1992 rating decision because the RO failed to obtain service records which existed at the time of that decision which may have been identified in the original claim dated in April 1992. 

However, regulations in effect at the time of the September 1992 rating decision stated that the requirement that VA assist the claimant in developing facts pertinent to his or her claim shall not be construed as shifting from the claimant to the VA the responsibility to produce necessary evidence. 38 C.F.R. § 3.159 (1992). Unlike the present case, when information sufficient to identify and locate necessary evidence is of record, VA shall assist a claimant by requesting, directly from the source, existing evidence which is either in the custody of military authorities or maintained by another Federal agency. 38 C.F.R. § 3.159(b) (1992). Moreover, whenever any claim is filed alleging entitlement to benefits by reason of disability or death from injury incurred while proceeding directly to or returning directly from active or inactive duty training, the burden of proof shall be on the claimant to establish entitlement. 38 C.F.R. § 3.6 (e) (1992). Here, there was simply no evidence or information of record suggesting that the RO should have requested or obtained the Veteran's reserve service records. Indeed, to do so, it is necessary that the RO be advised of Reserve service, including the unit to which the Veteran was assigned. This necessary information or evidence was not of record at the time of the September 1992 rating decision. 

The Board acknowledges that the Bell doctrine of constructive notice was newly in effect at the time of the September 1992 rating decision. Nevertheless, the Board finds that the instant case is distinguishable from Bell and the doctrine of constructive notice is not applicable in this case. In Bell v. Derwinski, in referring to documents created by VA, the Court of Veterans Appeals (Court) held that when a dispute arises as to the content of the record and where the documents proffered by the appellant are within the Secretary's control and could reasonably expect to be a part of the records "before the Secretary and the Board," such documents are, in contemplation of law, before the Secretary and the Board and should be included in the record. 2 Vet. App. 611. To the contrary, in this case, the Veteran's reserve service records were not created by VA or in VA's control at that time of the September 1992 rating decision, nor had the Veteran submitted sufficient information or evidence put VA on notice that such records may exist or to enable VA to obtain them. Thus, it is not reasonable to expect that the INACDUTRA participation record was available for review or associated with the claims folder at the time of the September 1992 rating decision. 

Accordingly, the assertions of the Veteran notwithstanding, the INACDUTRA participation record dated from March 14 to March 19, 1992, which showed that the Veteran served on INACDUTRA on March 18, 1992, cannot be found to be part of the record at the time of the September 1992 rating decision so as to be considered a basis for a finding of CUE. 

In addition, the Veteran's argument that the RO failed in its duty to assist him in obtaining necessary information or evidence necessary to substantiate a claim for service connection at the time of the September 1992 decision must be discounted as it is well settled that a failure in the duty to assist cannot constitute CUE. Caffrey v. Brown, 6 Vet. App. 377, 384 (1994) (noting that a breach in the duty to assist creates an incomplete record, not an incorrect record).

Regarding the Veteran's assertion that his father was misadvised by VA personnel on how to complete the April 1992 application for benefits, the Board finds that this argument holds little weight. Specifically, regulation at the time of the September 1992 rating decision provided that a claim by a veteran for compensation may be considered a claim for pension; and a claim by a veteran for pension may be considered to be a claim for compensation. 38 C.F.R. § 3.151 (a) (1992). In this case, regardless of how the Veteran's father was allegedly instructed to complete the April 1992 application for benefits, he simply did not provide information requested within the application that may have suggested or indicated that the accident occurred while traveling to or from Reserve military training. Indeed, not only did the Veteran's father leave the information pertaining to the Veteran's reserve service blank, he affirmatively stated that the Veteran was a full-time nursing student at the time of the accident and that his last date of employment was the date that he was discharged from active service. Thus, it remains that because there was no evidence of record at the time of the September 1992 rating decision that the accident occurred during service or travel to or from any period of Reserve military training, the RO, in accordance with regulations then in effect, correctly deemed the claim to be for nonservice-connected disability pension benefits, which by its terms, suggests that the disability was not any incident of military service. It is noted that the Veteran himself subsequently filed, and was granted a similar claim. Appellant at one point concedes that he did not provide the INACDUTRA information until told about it during his second period of service. That claim was then granted.

The Board also acknowledges the Veteran's assertions that he did not have the mental capacity to understand his procedural rights following the September 1992 rating decision, or to file a claim for service connection until October 1997 due cognitive impairment resulting from the March 1992 brain injury. In this regard, the Board notes that in Barrett v. Principi, 363 F.3d 1316, 1320 (Fed. Cir. 2004), a decision dating after the rating decision at issue, the Federal Circuit held that mental illness may justify the tolling of the 120-day time limit for filing an appeal to the Court set forth at 38 U.S.C. § 7266(a). Specifically, the Federal Circuit held that equitable tolling may be available where a claimant is able to show that his mental illness "rendered him incapable of 'rational thought or deliberate decision making,' or 'incapable of handling his own affairs or unable to function in society'". The Federal Circuit held that a medical diagnosis alone or vague assertions of mental problems will not suffice. Id. at 1321.

The Board has found no precedential decision which applies the reasoning of Barrett, which addressed appeals to the Court under 38 U.S.C.A. § 7266, to situations such as this where an appeal was not filed under 38 U.S.C.A. § 7105. 

Under 38 U.S.C.A.§ 7105 and 38 C.F.R.§ 20.200, it is abundantly clear that a Notice of Disagreement must be filed within one year after notification of the action being appealed or a Substantive Appeal must be filed within 60 days of the issuance of the Statement of the Case or within the time remaining of the one year period for appeal. In the present case, the Veteran did not perfect an appeal. Accordingly, the September 1992 denial became final. 

For the sake of argument in applying the reasoning of Barrett to the situations where a Substantive Appeal (rather than an appeal to the Court) was not filed, the Veteran still could not prevail on the facts. Specifically, the medical evidence of record for the time period in question shows that while the Veteran indeed suffered from cognitive deficits due to residuals of the March 1992 brain injury, the August 1992 neuropsychiatric VA examination showed that the Veteran denied problems with personality and memory and he reported attendance in nursing school at that time. Moreover, at the time of the September 1992 rating decision, there was no suggestion in the record that the Veteran was incompetent for VA purposes or otherwise mentally incapable of pursuing a timely appeal at that time. Thus, the Board finds that, even if Barrett is applicable to the time limits specified in 38 U.S.C.A. § 7105 and 38 C.F.R. § 20.302 (which in the absence of specific judicial precedent it does not concede), the Veteran's mental illness did not prevent him from filing an appeal within the appropriate one year period.

Regarding the Veteran's assertions that residuals of the March 1992 brain injury have remained constant since the date of the accident, this assertion simply does not bear on the issue as to whether there was evidence of record at the time of September 1992 rating decision indicating that the accident occurred during travel to or from any period of Reserve military training.

For these reasons, the Board finds that the rating decision of September 1992 was adequately supported by the evidence then of record and the statutory and regulatory provisions extant at that time were correctly applied. Therefore, on this record, the Board concludes that a valid claim of CUE has not been presented. 38 U.S.C.A. § 7105; 38 C.F.R. § 3.105(a). 



ORDER

Entitlement to an effective date prior to October 23, 1997, for the establishment of service connection for residuals of a brain injury based on CUE in the September 1992 rating decision is denied. 


____________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs